UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
JUSTIN GOLDMAN,

                        Plaintiff,

        - against -

BREITBART NEWS NETWORK, LLC;
HEAVY, INC.; TIME, INC.; YAHOO, INC.;
VOX MEDIA, INC.; GANNETT COMPANY, INC.;
HERALD MEDIA, INC.; BOSTON GLOBE
MEDIA PARTNERS, LLC; NEW ENGLAND
SPORTS NETWORK, INC.,

                        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SECOND AMENDED COMPLAINT
FOR COPYRIGHT INFRINGEMENT

17 Civ. 3144 (KBF)

JURY TRIAL DEMANDED

## INTRODUCTION

1.    This is an action for copyright infringement pursuant to 17 U.S.C. 106(5) based on the unauthorized for-profit display by separate websites owned and operated by each of the defendants of a photograph created by plaintiff that is protected by a federal copyright duly registered with the United States Copyright Office.

## POSSIBLY RELEVANT DISCLOSURE

2.    There is currently pending in this Court an action for, in part, copyright infringement pursuant to 17 U.S.C. 106(5) that was commenced by plaintiff against other defendants based on their unauthorized for-profit display of the same photograph at issue in this action.  In that action, a specific legal issue -- which may or may not be presented in this action -- is the subject of a motion to dismiss that is currently being briefed (Goldman v. Advance Publications, Inc., et al,

S.D.N.Y., 16 Civ. 9031 (ALC) ("Advance").   In commencing this action,  plaintiff does not

believe the pendency of that action presents any impediment to or reason to delay the progress of

this action.

THE PARTIES

3.  Plaintiff Justin Goldman is a resident of the City and State of New York.

4.  Each of the defendants owns and operates one or more for-profit websites and each is

amenable to suit in this district.

JURISDICTION AND VENUE

5.  This Court has jurisdiction over this case pursuant to 28 U.S.C. §1338.

6.  This Court has personal jurisdiction over each defendant because either a) it is a

resident of this district or b) if it is not, the requirements of CPLR 302(a)(3)(i) and/or (ii) are fully

satisfied.

7.  Venue in this district is proper pursuant to 28 U.S.C. §§1391(a) and 1400(a).

UNDERLYING FACTS

8.  On July 2, 2016, plaintiff took a photograph of NFL superstar Tom Brady (and others)

("the Photo").  A copy of the Photo is annexed hereto as Exhibit "A."  The Photo was registered

with the United States Copyright Office with Certificate No. Vau 1-250-526.

9.  Each defendant, without any legal authority to do so, prominently displayed, for each's

own for-profit purposes, a copy of the Photo.

10.  As of this filing, plaintiff is aware of some, but not necessarily all, of each defendant's

infringing displays of the Photo.  Plaintiff expects that through initial disclosures and/or discovery

the full extent of each defendant's infringing displays of the Photo will be established.  For now,

2

the following will identify the infringing uses of which plaintiff is currently aware:

a.  Annexed hereto as Exhibit "B" is a screenshot of an infringing display of the Photo made by defendant Breitbart News Network, LLC.

b.  Annexed hereto as Exhibit "C" is a screenshot of an infringing display of the Photo made by defendant Heavy, Inc.

c.  Annexed hereto as Exhibit "D" are two screenshots of infringing displays of the Photo made by defendant Time, Inc.

d.  Annexed hereto as Exhibit "E" are two screenshots of infringing displays of the Photo made by defendant Yahoo, Inc.

e.  Annexed hereto as Exhibit "F" is a screenshot of an infringing display of the Photo made by defendant Vox Media, Inc.

f.  Annexed hereto as Exhibit "G" is a screenshot of an infringing display of the Photo made by defendant Gannett Company, Inc.

g.  Annexed hereto as Exhibit "H" is a screenshot of an infringing display of the Photo made by defendant Herald Media, Inc.

h.  Annexed hereto as Exhibit "I" are two screenshots of infringing displays of the Photo made by defendant Boston Globe Media Partners, LLC.

i.  Annexed hereto as Exhibit "J" is a screenshot of an infringing display of the Photo made by defendant New England Sports Network, Inc.

11.  Each of the defendants' infringing displays derived originally from the exact same digital file of the copyrighted Photo that was initially introduced into the Internet without plaintiff's knowledge or consent, and all the defendants' infringing displays occurred within a

limited period of time.   Further, because the allegations addressed to all defendants are identical,

there are common questions of law.  Also, joinder of the defendants in this case will promote

judicial economy while protecting the parties for a just, speedy, and inexpensive outcome.

THE 'EMBED' ISSUE

12.   Several defendants in this case have indicated that they believe the practice called

"embedding" may be applicable to this case.  That practice is addressed at length in plaintiff's

Complaint in Advance, a copy of which is annexed hereto as Exhibit "K" and which to the extent

relevant is incorporated by reference into this paragraph of this Complaint.   Modified extracts

from that Complaint are set forth immediately below.

13.   The "embed" notion derives from a single 2007 Ninth Circuit decision -- Perfect 10,

Inc. v. Amazon.com, Inc., 508 F.3d 1146 (9th Cir.  2007) ("Perfect 10") -- that did not remotely

involve underlying facts that are even arguably analogous to the facts here.   That decision is

discussed further below.

14.   This case involves remarkably simple facts.   First fact: plaintiff is the owner of a

registered copyright for a photograph he took of NFL superstar Tom Brady (and others) on July 2,

2016.   Second fact: Each of the defendants owns popular for-profit general-interest websites that,

without any authority from plaintiff, prominently displayed the Photo in full and in full color.

Plaintiff alleges that each defendant, by thus displaying the Photo, violated his exclusive right

under Section 106(5) of the U.S. Copyright Act to "to display the copyrighted work publicly."

15.   In dramatic juxtaposition to this case -- where the defendants deliberately sought-out

and prominently "showed" the Photo for its own for-profit purposes -- Perfect 10 only concerned

a claim of copyright infringement based on a) the presentation by Google's search engine of low-

4

resolution "thumbnails" of copyrighted photos that its search technology indiscriminately swept-up and b) Google's providing to its visitors hyperlink "instructions" showing how they could, if they so desired -- by volitionally "clicking" on those "instructions" -- locate for themselves the full photos represented by those thumbnails, which photos become visible only as a result of that volitional clicking.

16.  The defendants' primary -- if not only -- purpose in invoking Perfect 10 to justify their otherwise infringing displays of the Photo is to avoid the legal responsibility that would otherwise result therefrom.  Exactly contrary to the defendants' proffered reading of that case, plaintiff contends that Perfect 10, properly read, eviscerates the defendants' asserted interpretation of it and supports the conclusion that the defendants' unauthorized displays of the Photo were actionable infringements.

17.  If the defendants helped themselves to the Photo from, e.g., a magazine or newspaper, their displays of it would (at least in the absence of a "fair use" defense) indisputably constitute actionable copyright infringement, and probably willful copyright infringement.  But, instead, the defendants will apparently assert that because they specifically sought-out, obtained, and displayed the Photo electronically -- by "embedding" -- they had an immutable and perpetual free pass to prominently display the Photo as they did, along with every other copyrighted photo ever created, with no obligation to their copyright owners and with no legal consequences.  To their credit, the defendants in Advance have acknowledged that the legal result they seek in that case is "absurd."

18.  As stated in Perfect 10, "Google operates a search engine, a software program that automatically accesses thousands of websites (collections of webpages) and indexes them within a

5

database stored on Google's computers. When a Google user accesses the Google website and types in a search query, Google's software searches its database for websites responsive to that search query.  Google then sends relevant information from its index of websites to the user's computer.  Google's search engines can provide results in the form of text, images, or videos."

19.  Further, "[t]he Google search engine that provides responses in the form of images is called 'Google Image Search.'  In response to a search query, Google Image Search identifies text in its database responsive to the query and then communicates to users the images associated with the relevant text.  Google's software cannot recognize and index the images themselves.  Google Image Search provides search results as a webpage of small images called 'thumbnails,' which are stored in Google's servers.  The thumbnail images are reduced, lower resolution versions of full-sized images stored on third-party computers."

20.  Further, "[w]hen a user clicks on a thumbnail image, the user's browser program interprets HTML instructions on Google's webpage.  These HTML instructions direct the user's browser to cause a rectangular area (a 'window') to appear on the user's computer screen.  The window has two separate areas of information.  The browser fills the top section of the screen with information from the Google webpage, including the thumbnail image and text.  The HTML instructions also give the user's browser the address of the website publisher's computer that stores the full-size version of the thumbnail . . . .   By following the HTML instructions to access the third-party webpage, the user's browser connects to the website publisher's computer, downloads the full-size image, and makes the image appear at the bottom of the window on the user's screen. Google does not store the images that fill this lower part of the window and does not communicate the images to the user; Google simply provides HTML instructions directing a user's browser

to access a third-party website.  However, the top part of the window (containing the information

from the Google webpage) appears to frame and comment on the bottom part of the window.

Thus, the user's window appears to be filled with a single integrated presentation of the full-size

image, but it is actually an image from a third-party website framed by information from Google's

website.  The process by which the webpage directs a user's browser to incorporate content from

different computers into a single window is referred to as 'in-line linking.' [citation omitted]  The

term 'framing' refers to the process by which information from one computer appears to frame

and annotate the in-line linked content from another computer."

     21.  According to the Court, "Plaintiff Perfect 10 markets and sells copyrighted images of

nude models."  It claimed a) that static thumbnail renditions of its copyrighted photos were visible

on Google's Image Search and that those renditions constituted direct copyright infringement, and

b) that the full images that resulted from the user's volitional clicking on the thumbnails also

constituted direct copyright infringement.

     22.  The Court held that Google's static thumbnail renditions of Perfect 10's photos and its

providing "instructions" to Google's visitors to locate full versions of the photos did not constitute

direct copyright infringement.  Specifically, the Court explicitly articulated (and circumscribed) its

holding as follows (emphasis added): "our ruling that a computer owner does not display a copy

of an image when it communicates **only** the HTML address of the copy."  By so forcefully

limiting its ruling to that very narrow circumstance -- "communicates **only** the HTML address of

the copy" -- the Court made clear that if a website communicates (shows) more than "the HTML

address," as the defendants did here, that website will have indeed "displayed" the copyrighted

work in question.

23. In reaching its conclusion that Google's providing of "instructions" to enable users to locate and see the full photos represented by the thumbnails did not constitute direct copyright infringement, the Court, addressing the specific facts before it, articulated a "server test" that held that the photos in question were not "stored" on Google's computers and therefore could not lead to a finding of direct infringement by Google. Both the district court's and the Ninth Circuit's opinions emphasized that the so-called "server test" -- originally promulgated by the district court in that case -- was specifically responsive and applicable to the unique circumstances (and legal vulnerabilities) of search engines like Google's.

24. Explaining the limitations of its ruling, the Court declared (emphasis added): "Instead of communicating a copy of the image, Google provides HTML instructions that direct a user's browser to a website publisher's computer that stores the full-size photographic image. Providing these HTML instructions is not equivalent to showing a copy. First, the HTML instructions are lines of text, not a photographic image. Second, HTML instructions do not themselves cause infringing images to appear on the user's computer screen. The HTML merely gives the address of the image to the user's browser. The browser then interacts with the computer that stores the infringing image. It is this interaction that causes an infringing image to appear on the user's computer screen."

25. The Ninth Circuit explicitly explained why it found that Google did not violate the copyright owner's "exclusive right . . . to display the copyrighted work publicly" [17 U.S.C. 106(5)] as follows (emphasis added): "Google's activities do not meet this definition because Google transmits or communicates only an address which directs a user's browser to the location where a copy of the full-size image is displayed. Google does not communicate a display of the

work itself."

26. To prevail here, the defendants must assert that <u>Perfect 10</u>'s holding on the facts before it that "a computer owner does not display a copy of an image when it communicates <u>only</u> the HTML address of the copy" somehow <u>sub silentio</u> immunizes their own volitional full displays -- "communication" -- of the Photo on radically different facts. Some of those factual differences are:

a. Instead of a thumbnail of the Photo, the defendants prominently displayed the Photo in full and in full color.

b. The defendants provided no "instructions" of any kind to its visitors to tell them how and where to find the Photo, if they so chose.

c. The defendants provided no "address which directs a user's browser to the location where a copy of the full-size image is displayed."

d. Instead of providing any such "instructions" or "address" to its visitors, so that they could -- by "clicking" -- independently and volitionally choose whether or not to view the full photos represented by a thumbnail, the defendants themselves specifically chose to seek out the Photo, import it to their websites, and display it for all visitors to their sites to see, whether those visitors wanted to see it or not. In short, the defendants unilaterally did the necessary "clicking" for all their visitors.

e. While Google indiscriminately swept-up Perfect 10's photos as part of its search engine operation, and did not in any way single out those photos for its entirely passive thumbnail renditions of them, the defendants singled out the Photo for their prominent displays of it on their websites.

10

f.  While Google's business (as here relevant) is to indiscriminately and passively provide thumbnails of millions of photos that are swept-up by its search technology, the defendants' business (as here relevant) is to publish for-profit editorial websites for which they select and display specific content to further their for-profit purposes.

g.  While the Court in <u>Perfect 10</u> emphasized that Google's "HTML instructions direct the user's browser to cause a rectangular area  (a 'window') to appear on the user's computer screen," there is no such 'window' on the defendants' prominent displays of the Photo.

h.  Further, while the Court in <u>Perfect 10</u> also emphasized that "the term 'framing' refers to the process by which information from one computer appears to frame and annotate the in-line linked content from another computer," and while the defendants may assert that their displays of the Photo constituted such "framing," there is no such "framing" on their prominent displays of the Photo.

27.  Plaintiff's undersigned counsel has previously presented the following hypothetical to (prior) counsel for the defendants in <u>Advance</u>: "A copyright lawyer walks into a bar -- named 'Remember 9/11.'  At each end of the bar is an oversized computer screen, and each constantly shows (displays?) the exact same visual image: a full-screen, full-color rendition of the (much litigated) photo of the flag-raising at Ground Zero.[1]  The source for one computer is a 'copy' of the photo; the source for the other is a 'link' to a distant website, which may or may not have authority to offer the photo.  Is one an infringement, and the other not?  Can one (at least hypothetically) be enjoined, and the other not?  Should these (otherwise identical) displays be

---

[1] See, <u>e.g.</u>, <u>North Jersey Media Group, Inc. v. Pirro and Fox News Network, LLC</u>, 74 F.Supp. 3d 605 (S.D.N.Y. 2015), 13 Civ. 7153 (ER).

treated wholly differently as a matter of copyright law?"

28. Advance's counsel candidly responded: "While your '9/11 Bar' hypothetical does a good job of showcasing how the server test can be perceivably absurd, it does not address the fact that the language of the Copyright Act [sic] does not consider in-line links to be infringing." Whether the "language" of the Copyright Act in fact mandates the admittedly "absurd" outcome to be urged by defendants here will be the central issue to be decided by this Court in this case. (Second Circuit: "A statute [here, the Copyright Act] should be interpreted in a way that avoids absurd results." United States v. Dauray, 215 F.3d 257, 264 (2d Cir. 2000).)

29. More recently, Plaintiff's counsel presented a second hypothetical to counsel for the defendants in Advance: "A company named Server, Inc. owns 500 highway billboards in the state of New Jersey, all of which are controlled by computers. The 'Trump for President' campaign -- or, alternatively, the Klan, or maybe just a prominent 'Gentlemen's Club' -- contracts with Server, Inc. to display in full and filling the entire billboards the Ground Zero flag-raising photo, possibly with a legend at the bottom saying 'Brought to you by . . . .' Instead of getting a license from the copyright owner for these 500 displays, the entity chooses the 'embed' method of acquiring and displaying the photo. Questions: Infringement? or Perfectly Legal?"

30. Advance's counsel did not respond to that hypothetical. Here too, if the defendants are to prevail in this case, this Court will necessarily have to find that those 500 uses are "perfectly legal."

31. And here's a third (and final) hypothetical: "It is the seventh game of the World Series -- for these purposes, at Citi Field -- and during the 'seventh inning stretch' the people in charge decide -- without any authority -- to display that same flag-raising photo in full on the jumbotron,

12

where it is seen by 50,000 people in the stadium and by 100 million people on television.  Solely

to avoid the (presumably high) license fee that would otherwise be required, it is decided to

display the photo through [the] 'embed' process.  Questions: Infringement or Perfectly Legal?"

For the defendants to prevail in this case, this Court will have to find that that (humongous)

display of that copyrighted photo was perfectly legal.

32.   The asserted  "embed" justification for the defendants' unauthorized prominent

displays is, at best, a contorted, out-of-context, highly technical, and exquisitely self-serving

extrapolation from that one Google "search engine" case.  Except for providing a means for

predatory publishers to avoid paying license fees for their increasingly rampant appropriation of

copyrighted content, as in this case, the "embed" justification does not even arguably serve any of

the purposes of our copyright law -- or any other positive social purpose.

CAUSE OF ACTION FOR COPYRIGHT<br>INFRINGEMENT AGAINST EACH DEFENDANT

33.   Plaintiff incorporates here the contents of Paragraphs 1 through 32 above.

34.   The United States Copyright Act grants to all copyright owners the "exclusive right"

to "display" their copyrighted works "publicly," 17 U.S.C. 106(5), and the Act defines "display" as

"to show a copy of it, either directly or by means of a film, slide, television image, or any other

device or process or, in the case of a motion picture or other audiovisual work, to show indi-

vidual images nonsequentially." 17 U.S.C. 101. Each defendant separately violated plaintiff's

"exclusive right" to "display" the Photo by its separate public display of it without plaintiff's

knowledge or consent.  Accordingly, each defendant is separately liable to plaintiff for its separate

infringement(s) of the registered copyright in the Photo.

13

WHEREFORE, with respect to each act of copyright infringement by each defendant,

plaintiff demands judgment against each a) issuing a permanent injunction preventing each

defendant from making any further unauthorized use or display of the Photo; b) awarding to

plaintiff from each defendant all appropriate damages, including statutory damages, as determined

by the Court or jury; c) awarding to plaintiff each defendant's profits attributable to each's

infringements; d) awarding to plaintiff his costs and attorneys' fees; and e) awarding such other

relief as the Court deems just.

Dated: May 26, 2017

Kenneth P. Norwick (KN4622)
NORWICK & SCHAD
110 East 59th Street
New York, New York 10022
(212) 751-4440
ken@norwickschad.com

Attorneys for Plaintiff