UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

-------------------------------------------------------------x

JUSTIN GOLDMAN,                                    :
                                                   :
                          Plaintiff,               :
                                                   :
              v.                                   :
                                                   :
BREITBART NEWS NETWORK, LLC; HEAVY,                 :        17 Civ. 3144 (KBF)
INC.; TIME, INC.; YAHOO, INC.; VOX MEDIA,          :
INC.; GANNETT COMPANY, INC.; HERALD                :
MEDIA, INC.; BOSTON GLOBE MEDIA                    :
PARTNERS, LLC; NEW ENGLAND SPORTS                  :
NETWORK, INC.,                                     :
                                                   :
                          Defendants.              :
                                                   :
-------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO CERTIFY DECISION
FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b) AND
TO STAY PROCEEDINGS PENDING APPEAL**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ........................................................................................................... 5

    I.     THE COURT SHOULD CERTIFY THE ORDER FOR INTERLOCUTORY
          APPEAL ................................................................................................... 5

          A.     The Order Determined a Controlling Issue of Law ................................. 5

                 1.     The Order Decided a Pure Legal Question .................................... 5

                 2.     The Issue of Law the Court Decided in the Order is
                      "Controlling"................................................................................. 7

          B.     There Is Plainly Substantial Ground for Difference of Opinion on the
               Issue Decided in the Order ....................................................................... 9

          C.     An Appeal of the Order Would Materially Advance Termination of
               the Litigation ........................................................................................... 12

    II.    THE COURT SHOULD STAY THE ACTION PENDING THE
          INTERLOCUTORY APPEAL ................................................................. 13

CONCLUSION ....................................................................................................... 14

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*American Broadcasting Cos., Inc. v. Aereo, Inc.*,
  134 S. Ct. 2498 (2014) ................................................................................11

*In re Auction Houses Antitrust Litig.*,
  164 F. Supp. 2d 345 (S.D.N.Y. 2001), *aff'd*, 42 F. App'x 511 (2d Cir. 2002) ........................2

*Balintulo v. Daimler AG*,
  727 F.3d 174 (2d Cir. 2013) ..........................................................................5

*Batalla Vidal v. Nielsen*,
  No. 16 Civ. 4756 (NGG) (JO), 2018 WL 333515 (E.D.N.Y. Jan. 8, 2018) ...........................13

*Capitol Records, Inc. v. MP3tunes, LLC*,
  48 F. Supp. 3d 703 (S.D.N.Y. 2014), *aff'd in part, rev'd in part on other
  grounds*, 844 F.3d 79 (2d Cir. 2016) ................................................................12

*Capitol Records, LLC v. ReDigi Inc.*,
  934 F. Supp. 2d 640 (S.D.N.Y. 2013), *appeal pending*, 16-2321 (2d Cir.) ...........................11

*Capitol Records, LLC v. Vimeo, LLC*,
  972 F. Supp. 2d 537 (S.D.N.Y. 2013) ..........................................................6, 8, 9

*Chavez v. Occidental Chem. Corp.*,
  No. 17 Civ. 3459 (PAE), 2018 WL 352810 (S.D.N.Y. Jan. 10, 2018) ..................................13

*Consol. Edison, Inc. v. Northeast Utils.*,
  318 F. Supp. 2d 181 (S.D.N.Y. 2004) ..............................................................12

*Fed. Hous. Fin. Agency v. UBS Americas, Inc.*,
  858 F. Supp. 2d 306 (S.D.N.Y. 2012), *aff'd*, 712 F.3d 136 (2d Cir. 2013) ..................7, 11, 12

*Flava Works, Inc. v. Gunter*,
  689 F.3d 754 (7th Cir. 2012) ........................................................................10

*Flo & Eddie, Inc. v. Sirius XM Radio Inc.*,
  No. 13 Civ. 5784 CM, 2015 WL 585641 (S.D.N.Y. Feb. 10, 2015) ............................. *passim*

*Glatt v. Fox Searchlight Pictures Inc.*,
  No. 11 Civ. 6784 (WHP), 2013 WL 5405696 (S.D.N.Y. Sept. 17, 2013) ..............................4

*Goldman v. Advance Publ'ns, Inc.*,
  No. 16 Civ. 9031 (ALC) (SN) .....................................................................3, 8

*Keller v. Lee*,
  No. 96 Civ. 4168 (DLC), 1997 WL 289853 (S.D.N.Y. May 29, 1997) ...................................9

*Kinkead v. Humana, Inc.*,
  No. 3:15-CV-01637(JAM), 2016 WL 9453808 (D. Conn. Oct. 13, 2016) ...........................14

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in
  Amministrazione Straordinaria*,
  921 F.2d 21 (2d Cir. 1990)...............................................................................................3

*In re Lloyd's Am. Tr. Fund Litig.*,
  No. 96 CIV. 1262 (RWS), 1997 WL 458739 (S.D.N.Y. Aug. 12, 1997).................................7

*New York Racing Ass'n, Inc. v. Perlmutter Publ'g, Inc.*,
  959 F. Supp. 578 (N.D.N.Y. 1997) ...................................................................................11

*Perfect 10, Inc. v. Amazon.com, Inc.*,
  508 F.3d 1146 (9th Cir. 2007) ................................................................................. *passim*

*Perfect 10 v. Google, Inc.*
  416 F. Supp. 2d 828 (C.D. Cal. 2006) .................................................................................6

*Pinter v. City of New York*,
  976 F. Supp. 2d 539 (S.D.N.Y. 2013).................................................................................12

*Reese v. BP Expl. (Alaska) Inc.*,
  643 F.3d 681 (9th Cir. 2011) .............................................................................................12

*Romea v. Heiberger & Assocs.*,
  988 F. Supp. 715 (S.D.N.Y. 1998) .......................................................................................9

*S.E.C. v. Credit Bancorp, Ltd.*,
  103 F. Supp. 2d 223 (S.D.N.Y. 2000)...............................................................................13

*Transp. Workers Union of Am., Local 100, AFL-CIO v. New York City Transit
  Auth.*,
  358 F. Supp. 2d 347 (S.D.N.Y. 2005)...............................................................................12

*In re WorldCom, Inc. Sec. Litig.*,
  No. 02 Civ. 3288, 2003 WL 22953644 (S.D.N.Y. Dec. 16, 2003)...........................................9

*Zakrzewska v. New School*,
  598 F. Supp. 2d 426 (S.D.N.Y. 2009).................................................................................11

**Federal Statutes**

17 U.S.C. § 101.......................................................................................................................10

28 U.S.C. § 1292(b) ....................................................................................................... *passim*

Digital Millennium Copyright Act.............................................................................6

**Other Authorities**

Anandashankar Mazumdar, *Photography Cases Spur Copyright Lawsuit Growth
  in New York*, Bloomberg BNA (Nov. 7, 2017),
  https://www.bna.com/photography-cases-spur-n73014471850/ ...............................8

Brian Feldman, *How a Photo of Tom Brady Could Change the Way That You See
  the Internet*, N.Y. Mag. (Feb. 16, 2018),
  http://nymag.com/selectall/2018/02/court-rules-that-embedding-tweets-could-
  violate-copyright.html.............................................................................................3

Eriq Gardner, *Judge Rules News Publishers Violated Copyright by Embedding
  Tweets of Tom Brady Photo*, Hollywood Reporter (Feb. 15, 2018),
  https://www.hollywoodreporter.com/thr-esq/judge-rules-news-publishers-
  violated-copyright-by-embedding-tweets-tom-brady-photo-1085342 .....................3

Louise Matsakis, *A Ruling Over Embedded Tweets Could Change Online
  Publishing*, Wired (Feb. 16, 2018), https://www.wired.com/story/embedded-
  tweets-copyright-law/ .............................................................................................4

Defendants Heavy, Inc. ("Heavy"), Time Inc. ("Time"), Oath Holdings Inc. ("Yahoo"),[1] Gannett Company, Inc. ("Gannett"), and  New England Sports Network, Inc. ("NESN") (collectively, the "Defendants") respectfully submit this memorandum of law in support of their motion for certification of an interlocutory appeal under 28 U.S.C. § 1292(b) ("Section 1292(b)") of this Court's Opinion and Order of February 15, 2018 (ECF No. 169), denying Defendants' motion for partial summary judgment, and granting partial summary judgment to Plaintiff (the "Order"), and to stay proceedings in this case pending resolution of an interlocutory appeal.

## PRELIMINARY STATEMENT

In the Order, the Court decided the fundamental legal issue of whether a website publisher that embeds links to a social media post containing a photograph hosted on a server owned and operated by a third party directly implicates the public display right under the Copyright Act.  In holding that embedding links to content is a public display, the Court expressly rejected the "Server Test" for online public display articulated by the Ninth Circuit more than a decade ago in *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007) ("*Perfect 10*").  As Defendants explained in their summary judgment papers, linking to content from third party sites by embedding—particularly from social media sites—is one of the most common ways that content is shared online, in large part based upon the settled expectations that resulted from *Perfect 10* and its acceptance by courts around the country.  This shared understanding has not only led to the explosion of embedding as an established practice on the Internet generally over the past decade, but appears also to explain the dearth of infringement claims based on embedding over that same time period.  The Court's Order means that, contrary to the holding of *Perfect 10*, anyone engaging in this ubiquitous practice is now potentially a

---

[1] Previously known as Yahoo Holdings, Inc.

direct copyright infringer.  The Order also opens web publishers up to potential claims for allegedly infringing content found in social media posts already embedded in countless articles. Just as importantly, the decision will require web publishers and social media platforms (as well as all platforms that allow users to embed links to content posted on those platforms) to revisit established practices.

Given these important practical implications of the Order, Defendants respectfully request that the Court certify the Order for interlocutory appeal under Section 1292(b).  The Court has the discretion to grant a motion to certify an order for interlocutory appeal when the order meets the statutory requirements that it "involve[] a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  The Order meets both requirements. Moreover, in keeping with the purpose of 1292(b) certification, the Order has "practical importance going well beyond run-of-the-mill concerns of parties before the court."  *See In re Auction Houses Antitrust Litig.*, 164 F. Supp. 2d 345, 347–48 (S.D.N.Y. 2001), *aff'd*, 42 F. App'x 511 (2d Cir. 2002).

As an initial matter, reversal of the Order would result in the immediate dismissal of all claims against several Defendants.  It would waste the Court's and the parties' resources to force those Defendants to go through discovery, and possibly trial, when a reversal on this threshold issue would remove them from the case.  Even for the Defendants against whom all claims would not be dismissed, reversal of the Order now would significantly narrow the claims at issue, and streamline the issues for trial.

And, of course, the fact that two Circuits and several district courts have embraced the Server Test in a variety of contexts (not only search engines involving volitional "clicking")

demonstrates that there is substantial ground for differences of opinion on the question the Court decided.

Further, the Second Circuit has held that "the impact that an appeal will have on other cases is a factor that [it] may take into account in deciding whether to accept an appeal that has been properly certified by the district court." *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 24 (2d Cir. 1990). Here, the same question (presented by the same plaintiff) decided by the Court is being litigated before another judge in this District. *See Goldman v. Advance Publ'ns, Inc.*, No. 16 Civ. 9031 (ALC) (SN). Rather than forcing the parties in that case to relitigate the same question this Court has just decided—thereby creating the potential for a conflict among courts within the Second Circuit—judicial economy favors resolution of this threshold issue on at least a Circuit-wide basis now.

More broadly, as the extensive press coverage that followed the Order confirms, the Court's decision here has dramatic, far-reaching practical implications for all online publishers, social media and content platforms, and Internet users—not only the Defendants here. One reporter observed that the decision "has the potential to shake the very foundation on which the modern internet is built, changing the way websites from huge publications to one-person blogs do business online." Brian Feldman, *How a Photo of Tom Brady Could Change the Way That You See the Internet*, N.Y. Mag. (Feb. 16, 2018), http://nymag.com/selectall/2018/02/court-rules-that-embedding-tweets-could-violate-copyright.html. Another noted that it "could prove quite consequential … potentially disrupting the way that news outlets use Twitter and causing many in technology to re-examine ubiquitous practices from embedding to linking." Eriq Gardner, *Judge Rules News Publishers Violated Copyright by Embedding Tweets of Tom Brady Photo*,

Hollywood Reporter (Feb. 15, 2018), https://www.hollywoodreporter.com/thr-esq/judge-rules-news-publishers-violated-copyright-by-embedding-tweets-tom-brady-photo-1085342. *See also* Louise Matsakis, *A Ruling Over Embedded Tweets Could Change Online Publishing*, Wired (Feb. 16, 2018), https://www.wired.com/story/embedded-tweets-copyright-law/ ("One of the most ubiquitous features of the internet is the ability to link to content elsewhere. Everything is connected via billions of links and embeds to blogs, articles, and social media. But a federal judge's ruling threatens that ecosystem. … The decision can be appealed, but if it stands and is adopted by other courts, it could change the way online publishing functions.").

As the Second Circuit has recognized, "Congress passed 28 U.S.C. § 1292(b) primarily to ensure that the courts of appeals would be able to rule on ... ephemeral question[s] of law that m[ight] disappear in the light of a complete and final record.  Congress also sought to assure the prompt resolution of knotty legal problems." *Glatt v. Fox Searchlight Pictures Inc.*, No. 11 Civ. 6784 (WHP), 2013 WL 5405696, at *1 (S.D.N.Y. Sept. 17, 2013) (quoting *Weber v. United States*, 484 F.3d 154, 159 (2d Cir. 2007)) (quotation marks omitted).  Here, the urgency of an interlocutory appeal is amplified by the practical reality that, absent an appeal of the Order now, the "knotty" legal question decided by the Court may not reach the Second Circuit at all. Defendants' other defenses are fact-dependent, and may not be amenable to summary judgment, which could mean that the parties would need to litigate through a jury trial (over a single count of non-willful infringement) before reaching an appealable final judgment.  It is entirely possible that some Defendants may not be able to justify incurring those associated financial costs.[2]  In any event, if Defendants prevail on other defenses, then the embedding issue would be decided by the Second Circuit only if Plaintiff opts to appeal, Defendants conditionally cross-appeal the

---

[2] Notably, three of the original Defendants have already settled during the pendency of this case.

earlier denial of summary judgment, and the Court of Appeals reverses the final judgment in favor of the Defendants, thereby requiring it to reach the previously-decided issue of whether embedding is an infringement of the display right.  In the meantime, the uncertainty engendered by a respected district court in the Second Circuit directly rejecting the Ninth Circuit on the vital question of whether a pervasive online practice directly implicates the public display right will continue.

For all of the above reasons, Defendants urge that the Court certify the Order for interlocutory appeal.

<u>**ARGUMENT**</u>

## I.    THE COURT SHOULD CERTIFY THE ORDER FOR INTERLOCUTORY APPEAL

Under Section 1292(b), a district court may certify an order for interlocutory appeal when the order (1) "involves a controlling question of law"; (2) "as to which there is substantial ground for difference of opinion"; and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  The Second Circuit instructs that where, as here, "a ruling satisfies these criteria and 'involves a new legal question or is of special consequence,' then the district court 'should not hesitate to certify an interlocutory appeal.'"  *Balintulo v. Daimler AG*, 727 F.3d 174, 186 (2d Cir. 2013) (quoting *Mohawk Indus. v. Carpenter*, 558 U.S. 100, 111 (2009)).

### A.    The Order Determined a Controlling Issue of Law

#### 1.    The Order Decided a Pure Legal Question

As an initial matter, the Order addresses a pure "issue of law": "how images shown on one website but stored on another website's server implicate an owner's exclusive display right." Order at 1.  *See* Order at 3 ("The parties agree that the principle issue briefed on this motion is a

legal one and amenable to summary judgment.").  In reaching its decision, the Court rejected the Server Test articulated by the Ninth Circuit in *Perfect 10* more than a decade ago.  *See id.* at 17. Whether the Server Test is compelled by the "plain language of the statute," as the Ninth Circuit held, 508 F.3d at 1160, or is inconsistent with that language, as this Court found, is a "pure question of law that the reviewing court could decide quickly and cleanly without having to study the record."  *Capitol Records, LLC v. Vimeo, LLC*, 972 F. Supp. 2d 537, 551 (S.D.N.Y. 2013) (citation omitted) (holding that application of DMCA Safe Harbor to pre-1972 sound recordings was a controlling issue of law because it "turned almost exclusively on a question of statutory interpretation").

In addition, whether *Perfect 10's* Server Test applies only to search engines and volitional conduct by users, as this Court decided, or whether it applies more broadly, as other courts have found, is also a pure question of law ripe for determination by the Second Circuit. Order at 22.  Although the Court distinguished this case from *Perfect 10* based on what it viewed as a relevant difference between search engines and news websites, *see* Order at 21-22, the distinction relied on a reading of *Perfect 10* that is in conflict with how other cases have consistently interpreted the decision.  Indeed, in their papers, Defendants cited a wide variety of contexts in which courts have applied *Perfect 10*. These cases collectively demonstrate that other courts have not limited the Server Test to search engines involving volitional conduct by users.[3] The question of how broadly the Server Test can apply is a question of law that is ripe for determination by the Second Circuit.

---

[3] In addition, the district court in *Perfect 10* illustrated its holding with an example of embedding indistinguishable from the ones at issue in this case (a website stating it "proudly show[s]" a single photo of Pelé embedded from a third party site).  *See Perfect 10 v. Google, Inc.* 416 F. Supp. 2d 828, 838-40 (C.D. Cal. 2006).

### 2.      The Issue of Law the Court Decided in the Order is "Controlling"

A question of law is "controlling" if:  "(1) reversal of the district court's opinion could result in dismissal of the action, (2) reversal of the district court's opinion, even though not resulting in dismissal, could significantly affect the conduct of the action, or (3) the certified issue has precedential value for a large number of cases."  *In re Lloyd's Am. Tr. Fund Litig.*, No. 96 CIV. 1262 (RWS), 1997 WL 458739, at *4–5 (S.D.N.Y. Aug. 12, 1997) (citing *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990)).  All three conditions are true of the embedding issue.

Here, reversal of the Order would result in complete dismissal of all claims against several of the Defendants.[4]  Without an interlocutory appeal, those Defendants may have to litigate this case through the rest of discovery and trial, even though, on an eventual appeal, they may be found to have had no liability in the first place.  Interlocutory appeal makes particular sense with respect to these Defendants.  *See id.*

Courts have emphasized that "resolution of an issue need not necessarily terminate an action in order to be 'controlling,' for the purposes of Section 1292(b)."  *Fed. Hous. Fin. Agency v. UBS Americas, Inc.*, 858 F. Supp. 2d 306, 337 (S.D.N.Y. 2012) (quoting *Klinghoffer*, 921 F.2d at 24 (quotation marks omitted)), *aff'd*, 712 F.3d 136 (2d Cir. 2013).  Instead, "it is enough to satisfy the statute's first prong that the issue is one that may importantly affect the conduct of the action."  *Id.* (citation and quotation marks omitted).  Here, even for the Defendants who allegedly made other, non-embedding uses of the Photo, reversal of the Order now would mean that "significant portions of th[e] lawsuit … will have to be dismissed," which would affect damages and could potentially determine liability as well.  *Flo & Eddie, Inc. v. Sirius XM Radio*

---

[4] In particular, the claims against Heavy, Gannett and NESN involve <u>only</u> an embedded link to the Photo at issue.

*Inc.*, No. 13 Civ. 5784 CM, 2015 WL 585641, at *2 (S.D.N.Y. Feb. 10, 2015) (granting Section 1292(b) motion in copyright infringement action).

Finally, the question whether embedding links to content from social media directly implicates the public display right has significant "precedential value for a large number of cases." *Id.* At a minimum, appellate review of the Order now would avoid the potential confusion from a contrary result in the nearly identical case, *Goldman v. Advance Publications, Inc.*, currently pending before Judge Carter.

More broadly, in rejecting the application of the Server Test, the Order opens the door to many more such cases. As the Court is no doubt aware, copyright infringement lawsuits arising out of use of photos online occupy an increasingly substantial portion of federal court litigation—particularly in this District. *See, e.g.*, Anandashankar Mazumdar, *Photography Cases Spur Copyright Lawsuit Growth in New York*, Bloomberg BNA (Nov. 7, 2017), https://www.bna.com/photography-cases-spur-n73014471850/. While it appears that most potential plaintiffs had understood *Perfect 10* to bar direct infringement claims based upon embedding links to social media, any such understanding has now been thrown into question. In *Flo & Eddie*, Judge McMahon certified for interlocutory appeal her decision that the holders of common law copyrights in pre-1972 sound recordings hold the right to exclusive public performance, in part because, in light of that decision, other broadcasters would "undoubtedly be sued in follow-on actions." 2015 WL 585641, at *2. As the court determined, and is also true here, "[r]eceiving authoritative guidance from the Second Circuit … will help resolve those actions quickly and consistently." *Id.*

As the press coverage of the Order confirms, commentators have already recognized the profound impact that this decision will have on online publishing. *See supra*; *cf. Vimeo*, 972 F.

Supp. 2d at 553 (recognizing that issue decided by court concerning "red flag" knowledge of infringement "is a difficult question that has important ramifications for service providers such as [the defendant] Vimeo"). Given the global nature of the Internet, even trial-level decisions about Internet technologies may have widespread, nationwide impact on behavior. And the fact that *Perfect 10* still applies within the Ninth Circuit is of little practical import when actions for online infringement can be brought in many courts—here, the Court's decision may well encourage forum shopping.

For all of these reasons, the Order unquestionably decided a controlling issue of law that should be certified to the Second Circuit.

## B.     There Is Plainly Substantial Ground for Difference of Opinion on the Issue Decided in the Order

Courts hold that the "substantial ground for difference of opinion" prong is met when "(1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit." *Vimeo*, 972 F. Supp. 2d at 551 (citation omitted).

Given the Ninth Circuit's decision in *Perfect 10*, there is indisputably "conflicting authority" on the issue the Court decided. Indeed, to reach its decision, the Court had to directly reject *Perfect 10*, thereby creating a clear split between courts in the Second and Ninth Circuits. That alone satisfies the second prong of Section 1292(b). *See In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288, 2003 WL 22953644, at *6 (S.D.N.Y. Dec. 16, 2003) (finding substantial difference of opinion among "a handful of courts elsewhere" plus "at least one member of the Second Circuit"); *Romea v. Heiberger & Assocs.*, 988 F. Supp. 715, 716 (S.D.N.Y. 1998) (finding that "a conflict among the circuits" satisfied second prong); *Keller v. Lee*, No. 96 Civ. 4168 (DLC), 1997 WL 289853, at *1 (S.D.N.Y. May 29, 1997) (granting motion to certify where "[t]he courts that have considered this issue have come to divergent results").

In addition, although the Court's decision distinguishes the Seventh Circuit's decision in *Flava Works, Inc. v. Gunter*, 689 F.3d 754 (7th Cir. 2012), on the grounds that that case primarily involved contributory—not direct—infringement, the Seventh Circuit plainly *did* adopt the Server Test in order to reach its decision.  In analyzing whether defendant myVidster contributed to any infringement of the public performance right by allowing its users to embed videos on its site, the court compared the defendant's actions to "listing plays and giving the name and address of the theaters where they are being performed," and held that doing so "is not 'transmitting or communicating'" the performances.  *Id.* at 761.  *Cf.* 17 U.S.C. § 101 (defining "perform or display a work 'publicly'" as including to "transmit or otherwise communicate a performance or display of the work").  Indeed, the court expressly rejected the concept of embedding as direct infringement:

> Is myVidster doing anything different? ***To call the provision of contact information*** [*i.e.*, the provision of HTML instructions to embed a piece of content] ***transmission or communication and thus make myVidster a direct infringer would blur the distinction between direct and contributory infringement*** and by doing so make the provider of such information an infringer even if he didn't know that the work to which he was directing a visitor to his website was copyrighted. Then he would have to search for a safe harbor in the Digital Millennium Copyright Act. myVidster doesn't touch the data stream, which flows directly from one computer to another, neither being owned or operated by myVidster.

*Flava Works*, 689 F.3d at 761 (emphasis added).  *See also id.* at 762 (holding that the defendant's then-discontinued service allowing the upload of "backup" copies of the infringing videos to defendant's own servers *would*, by contrast, "infringe[] Flava's copyrights directly").  Thus, Defendants submit that the Seventh Circuit already falls on the Ninth Circuit's side of the circuit split.

Although the Court found much of the subsequent precedent that relied on or otherwise embraced *Perfect 10* distinguishable for various reasons, *see* Order at 12-15, the fact that, at a

minimum, no case (until the Northern District of Texas just a few months ago) directly rejected *Perfect 10* demonstrates a substantial ground for differences of opinion on the applicability of the Server Test.  Indeed, courts frequently certify questions on which contrary precedent exists, even if the court has "little doubt" that its own ruling is correct.  *Federal Hous. Fin. Agency*, 858 F. Supp. 2d at 339; *see also Flo & Eddie*, 2015 WL 585641, at *2 ("[W]hile this Court believes it reached the correct result, I appreciate that another judge might feel differently."); *Zakrzewska v. New School*, 598 F. Supp. 2d 426, 437 (S.D.N.Y. 2009) (although court felt "obliged" to rule the way it had, it certified order for interlocutory appeal in light of contrary case law); *New York Racing Ass'n, Inc. v. Perlmutter Publ'g, Inc.*, 959 F. Supp. 578, 584 (N.D.N.Y. 1997) ("While the Court is confident that it has come to the proper conclusions, the Court finds that there is clearly room for difference of opinion.").

The Court's Order here also invokes "difficult question[s]" of "first impression" for the Second Circuit.  In particular, the Order was driven in significant part by this Court's interpretation of the Supreme Court's decision in *American Broadcasting Cos., Inc. v. Aereo, Inc.*, 134 S. Ct. 2498 (2014), as standing for the proposition that copyright liability cannot turn on "invisible, technical processes imperceptible to the viewer."  Order at 21.  But the application and reach of *Aereo* is far from a settled issue.  Across-the-board application of the principle that technological architecture no longer matters in determining liability would abrogate large swathes of copyright law.  *See, e.g., Capitol Records, LLC v. ReDigi Inc.*, 934 F. Supp. 2d 640, 653 (S.D.N.Y. 2013) (holding that online marketplace for "used" digital music files infringed copyright, even though, from the perspective of the user, the experience was no different from a used record store, to which the first sale doctrine applied), *appeal pending*, 16-2321 (2d Cir.).  And at least one judge in this District has pointed out that the Supreme Court in *Aereo* "expressly

excluded 'novel issues not before the Court, as to which 'Congress has not plainly marked [the] course,'" and held that third-party web domains, which were "not 'substantially similar' to a community antenna television provider" were "beyond *Aereo's* reach." *Capitol Records, Inc. v. MP3tunes, LLC*, 48 F. Supp. 3d 703, 719 (S.D.N.Y. 2014) (quoting *Aereo*, 134 S. Ct. at 2511), *aff'd in part, rev'd in part on other grounds*, 844 F.3d 79 (2d Cir. 2016)).

In sum, although the Court here ultimately agreed with the interpretation of the Copyright Act as applied to embedding promoted by Plaintiff and his *amici*, there are clear grounds for difference of opinion on this issue, which "warrant[] a close look by a controlling court." *Flo & Eddie*, 2015 WL 585641, at *2.

### C.    An Appeal of the Order Would Materially Advance Termination of the Litigation

Section 1292(b) does not "require[] that the interlocutory appeal have a final, dispositive effect on the litigation, only that it 'may materially advance' the litigation." *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011).  This includes "significantly restrict[ing] the scope of ... litigation," *Fed. Housing Fin. Agency*, 858 F. Supp. 2d at 338, or "obviat[ing] the need for protracted and expensive litigation." *Transp. Workers Union of Am., Local 100, AFL-CIO v. New York City Transit Auth.*, 358 F. Supp. 2d 347, 353 (S.D.N.Y. 2005).  *See Pinter v. City of New York*, 976 F. Supp. 2d 539, 575 (S.D.N.Y. 2013) (certifying second interlocutory appeal to avoid "risk of expending scarce judicial resources by trying what may be unviable claims"); *Consol. Edison, Inc. v. Northeast Utils.*, 318 F. Supp. 2d 181, 196 (S.D.N.Y. 2004) (certifying question where "certainty" from Second Circuit would "help streamline the litigation for trial and on appeal").

As discussed above,[5] reversal of the Order would result in the <u>immediate</u> termination of the litigation for several Defendants.  Removing the embedded uses from contention in the case would also streamline the claims and issues for discovery and trial for the Defendants remaining in the case.

\* \* \*

In sum, all three prongs of Section 1292(b) are met here.  Defendants recognize that interlocutory appeal is the exception, not the rule.  But the profound and widespread impact of the Order on other parties (in addition to being dispositive for a number of the Defendants here and streamlining the claims as to the remaining Defendants), as well as the likelihood that the decision would not otherwise reach the Second Circuit, makes this the exception where immediate appeal is necessary and appropriate.

## II.     THE COURT SHOULD STAY THE ACTION PENDING THE INTERLOCUTORY APPEAL

A decision from the Second Circuit on the threshold issue of whether embedding infringes the display right will determine the scope of discovery (and whether some of the Defendants remain in the case at all).  Accordingly, judicial economy favors staying this action pending the interlocutory appeal, and courts routinely stay proceedings under these circumstances.  *See Flo & Eddie*, 2015 WL 585641, at \*4 (staying action pending appeal after certifying copyright liability issue for interlocutory appeal); *see also Chavez v. Occidental Chem. Corp.*, No. 17 Civ. 3459 (PAE), 2018 WL 352810, at \*10 (S.D.N.Y. Jan. 10, 2018); *Batalla Vidal v. Nielsen*, No. 16 Civ. 4756 (NGG) (JO), 2018 WL 333515, at \*4–5 (E.D.N.Y. Jan. 8,

---

[5] As courts have noted, "[a]lthough technically the question of whether there is a controlling issue of law is distinct from the question of whether certification would materially advance the ultimate termination of the litigation, in practice the two questions are closely connected." *S.E.C. v. Credit Bancorp, Ltd.*, 103 F. Supp. 2d 223, 227 (S.D.N.Y. 2000).

2018); *Kinkead v. Humana, Inc.*, No. 3:15-CV-01637(JAM), 2016 WL 9453808, at *3 (D. Conn. Oct. 13, 2016) ("[T]he motivation underlying my decision to grant certification—the desire to resolve this issue before the parties engage in potentially unnecessary litigation—would be undermined without an accompanying stay").

## **CONCLUSION**

For the foregoing reasons, the Court should grant Defendants' motion for certification of the Order for interlocutory appeal under Section 1292(b), and to stay proceedings pending the resolution of the interlocutory appeal.

Dated: New York, New York                   Respectfully submitted,
      March 5, 2018

                                              By: */s/ Robert Penchina*
                                               Robert Penchina

                                              BALLARD SPAHR, LLP
                                              1675 Broadway, 19th floor
                                              New York, NY 10019
                                              Tel.: (212) 850-6109
                                              penchinar@ballardspahr.com

                                              *Attorneys for Defendant Gannett Company, Inc.*

                                               By: */s/ Stephen M. Kramarsky*
                                                Stephen M. Kramarsky (SK-6666)
                                                Joseph P. Mueller (JM-3113)

                                             DEWEY PEGNO & KRAMARSKY LLP
                                             777 Third Avenue, 37th Floor
                                             New York, NY 10017
                                             Tel.: (212) 943-9000
                                             skramarsky@dpklaw.com
                                             jmueller@dpklaw.com

                                              *Attorneys for Defendant New England Sports Network*

By: */s/ Lacy H. Koonce, III*
    Lacy H. Koonce, III (LK 8584)
    Eric J. Feder (EF 8016)

DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, NY  10020
Tel.: (212) 489-8230
Fax: (212) 489-8340
Email: lancekoonce@dwt.com
Email: ericfeder@dwt.com

*Attorneys for Defendants Time Inc.*


By: */s/ Thomas P. Lane*
    Thomas Patrick Lane

WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
Tel.: (212) 294-6700
Fax: (212) 294-4700
tlane@winston.com

Jennifer A. Golinveaux (*pro hac vice*)
WINSTON & STRAWN LLP
101 California Street
San Francisco, CA 94111
Tel.: (415) 591-1400
jgolinveaux@winston.com

*Attorneys for Defendant Yahoo Holdings, Inc.*