UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
JUSTIN GOLDMAN,

                        Plaintiff,

      - against -                                  17 Civ. 3144 (KBF)

BREITBART NEWS NETWORK, LLC;
HEAVY, INC.; TIME, INC.; YAHOO, INC.;
VOX MEDIA, INC.; GANNETT COMPANY, INC.;
HERALD MEDIA, INC.; BOSTON GLOBE
MEDIA PARTNERS, LLC; NEW ENGLAND
SPORTS NETWORK, INC.,

                      Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

PLAINTIFF'S MEMORANDUM OF LAW
<u>IN OPPOSITION TO MOTION TO CERTIFY INTERLOCUTORY APPEAL</u>

                                                        Kenneth P. Norwick
                                                        NORWICK & SCHAD
                                                        110 East 59th Street
                                                        New York, NY 10022
                                                        (212) 751-4440
                                                        ken@norwickschad.com

                                                        Attorneys for Plaintiff

TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1

THE APPLICABLE LAW  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3

THIS CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    7

THIS MOTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    9

        "Controlling Question of Law" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    9

        "Substantial Ground for Difference of Opinion" . . . . . . . . . . . . . . . . . . . .   11

        "Materially Advance the Ultimate Termination of the Litigation" . . . . . . .   13

        The Requested Stay . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

TABLE OF AUTHORITIES

Cases

Belton v. GE Capital Consumer Lending Inc., 2016 U.S. Dist. LEXIS
    4312 (S.D.N.Y. 2016) (VB) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5, 11

Caruso v. City of New York, 2013 U.S. Dist. LEXIS 175617
    (S.D.N.Y. 2013) (RA) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

Ferreira v. Modell's Sporting Goods, Inc., 2013 U.S. Dist. LEXIS
    48489 (S.D.N.Y. 2013) (DAB) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

Ensor v. Chipotle Mexican Grill, Inc., 2013 U.S. Dist. LEXIS
    154802 (S.D.N.Y. 2013) (ALC) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

Hongkong & Shanghai Banking Corp. Ltd. v. Brandt, 2017 U.S. Dist.
    LEXIS 213343 (S.D.N.Y. 2017) (VEC). . . . . . . . . . . . . . . . . . . . . . . . .  6

In re Aluminum Warehousing Antitrust Litigation, 2015 U.S. Dist.
    LEXIS 87382 (S.D.N.Y. 2015) (KBF) . . . . . . . . . . . . . . . . . . . . . . . . .  6

In re Facebook, Inc., 986 F.Supp.2d 524 (S.D.N.Y. 2014) (RWS) . . . . . . . . . . .  3-5

L-7 Designs, Inc. v. Old Navy, LLC., 964 F.Supp.2d 299
    (S.D.N.Y. 2013) (DC) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6-7, 14

Lopez v. Overtime 1st Avenue Corp., 252 F.Supp.3d 268
    (S.D.N.Y. 2017) (RJS) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

Mitre Sports International Ltd. v. HBO, Inc., 2014 U.S. Dist. LEXIS
    12411 (S.D.N.Y. 2014) (GBD) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146 (9th Cir. 2007) . . . . .  passim

The Leader's Institute, LLC v. Jackson, 2017 WL 5629514
    (N.D. Tex. Nov. 22, 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2, 9

UMG Recordings, Inc. v. MP3.com, Inc., 2000 U.S.Dist.
    LEXIS 7439 (S.D.N.Y. 2000) (JSR) . . . . . . . . . . . . . . . . . . . . . . . . . .  5

Statutes

18 U.S.C. §12982(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  passim

Secondary Materials

Should Internet Content Be Free? The Best Model to Save Newspapers,
   Books, and Music in the Digital Age, https://www.huffingtonpost.
   com/anis-shivani/ whose-model-can-save-book_b_255497.html. . . . . .   12

PRELIMINARY STATEMENT

No one will ever accuse these defendants of understatement -- or of lacking what the Supreme Court and the Second Circuit (among probably every other court) have called "chutzpah." Their current motion is just the latest example.

In support of their Summary Judgment motion the defendants repeatedly proclaimed that the broadest possible reading of Perfect 10 and its "Server Test" were "settled law," only to have it conclusively established that those ostensible precedents were instead much closer to legal orphans. As of this writing in early 2018, the term "Server Test" has appeared in only one judicial decision outside the Ninth Circuit, and that decision was this Court's February 15 Opinion and Order ("the Court's Order") declining to apply it to the actual facts of the actual case before it. And as of this writing the legal doctrine urged by the defendants -- by any name -- has never, not once, been applied to a fact-pattern even arguably similar or analogous to the one in this case. Not once. So much for "settled law."

But, alas, this total lack of judicial support for their legal arguments has not deterred in the slightest these defendants -- all for-profit websites who by their own admission have come to "expect" (their word) the "right" to continue to help themselves with legal impunity to (and profit from) the copyrighted property of countless others. Instead, they have the temerity, the chutzpah, to attack as legal blasphemy a judicial decision from the Southern District of New York (no less) that deigned to question that self-awarded (and legally orphaned) "right" and that refused to follow (we almost wrote "swallow") that legal orphan.

The defendants' latest motion actually exceeds their prior propensity for ipse dixit overstatement and chutzpah that was so effectively seen-through and rejected in the Court's Order. As was the case with their "settled law" canard, their grand ipse dixit pronouncements in

support of their current motion simply do not withstand scrutiny. And this is especially true with respect to what this Court actually did — and did not do — in its Order.

To be sure, for-profit websites like the defendants' have taken full advantage of the opportunity -- the excuse -- to help themselves without payment (or indeed any regard for copyright) to the copyrighted property of others in the solemn name of "embedding." And, to be sure, the Court's Order does directly threaten their ability to continue to do exactly that -- to help themselves to, e.g., any and every copyrighted photograph they may ever see and covet on the Internet. And who can blame them for the horror they so clearly feel by the prospect of now maybe having to pay for what for over a decade they could simply take for free? But the fact that they got away with such copyright usurpation for more than a decade does not make it right, or legal.

Perfect 10 involved a search engine service that left the crucial copyright decisions to their individual visitors and that only "displayed" the photos in question one-on-one to individual users who specifically requested to see them. No wonder no court, not one, has come close to applying that case to protect wholesale copyright grabbers like these defendants. And no wonder the only cases to directly consider and rule on the defendants' proffered interpretation of the applicable law -- The Leader's Institute case in Texas and the Court's Order -- have rejected that interpretation as legally untenable.

And let's take a look at the defendants' rationale for the legal panic that drives their current motion. That rationale is not that the Court's Order was wrong as a matter of law or fairness -- they clearly know better. Instead, the stated rational for the motion is that companies like theirs have come to "expect" that they should be free to continue to help themselves with

legal impunity to every copyrighted photo on the Internet just because they've been getting away with it for the past ten years.  Chutzpah in spades.

We should not be surprised that such folks are not happy that a court has finally questioned that widespread copyright predation.  But, contrary to the premise of the current motion, such (profit-driven) unhappiness is no reason to grant the truly extraordinary relief these defendants now seek.

The Court's Order scrupulously tested and found baseless a) the defendants' proffered interpretation of Perfect 10 and the facts that underlay that decision, b) the purported body of "settled law" that allegedly followed it, c) the statutory law applicable to the "embed" issue, and d) the real-world impact of a decision rejecting their submissions, and found them unpersuasive.  The same conclusion is even more appropriate here.

## THE APPLICABLE LAW

Although a reader would never know it from the defendants' brief on this motion -- further evidence of their chutzpah -- the law governing the motion is well-established and beyond dispute or spin.  That law was recently succinctly summarized by Judge Sweet as follows (emphasis added; only citations omitted):

- *Section 1292(b)* provides for certification of an order for interlocutory appeal when the court determines: '(1) that such order involves a controlling question of law (2) as to which there is a substantial ground for difference of opinion and (3) that an immediate appeal from [that] order may materially advance the ultimate termination of the litigation';

3

- The proponents of an interlocutory appeal have the burden of showing that all three of the substantive criteria are met. . . . 'These three prerequisites create a significant hurdle to certification, and the barrier is only elevated by the mandate that *section 1292(b)* be 'strictly limited' because 'only exceptional circumstances [will] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment';

- [E]ven where the three legislative criteria of section *§1292(b)* appear to be met, district courts retain 'unfettered discretion to deny certification' if other factors counsel against it.' . . . Such unfettered discretion can be for 'any reason, including docket congestion' and 'the system-wide costs and benefits of allowing the appeal':

- The Second Circuit has noted that 'interlocutory appeals are strongly disfavored in federal practice,' and movants cannot invoke the appellate process 'as a vehicle to provide early review [even] of difficult rulings in hard cases;

- District Courts must accordingly 'exercise great care in making a *§1292(b)* certification,'. . . , ensuring that §1292(b) "be strictly construed . . . .' ("certification of a non-final order pursuant to *28 U.S.C. §1292(b)* is an extraordinary procedure only granted in 'exceptional circumstances'");

- "[T]he power to grant an interlocutory appeal must be strictly limited to the precise conditions stated in the law. . . . [o]nly exceptional circumstances will justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'

In re Facebook, Inc., 986 F.Supp.2d 524, 529-30 (S.D.N.Y. 2014) (RWS).

See also, among numerous others, Ferreira v. Modell's Sporting Goods, Inc., 2013 U.S. Dist. LEXIS 48489 (S.D.N.Y. 2013) (DAB); Ensor v. Chipotle Mexican Grill, Inc., 2013 U.S. Dist. LEXIS 154802 (S.D.N.Y. 2013) (ALC); Caruso v. City of New York, 2013 U.S. Dist. LEXIS 175617 (S.D.N.Y. 2013) (RA); Lopez v. Overtime 1st Avenue Corp., 252 F.Supp.3d 268 (S.D.N.Y. 2017) (RJS).

Further, see Belton v. GE Capital Consumer Lending Inc., 2016 U.S. Dist. LEXIS 4312 (S.D.N.Y. 2016) (VB): "[A]n appeal of the Memorandum Decision would not present a 'pure question of law' that the Second Circuit 'could decide quickly and cleanly without having to study the record.'" [citation omitted] . . . ('Because the court's determination was the result of a fact-specific inquiry, it did not involve a 'controlling question of law') [citation omitted] ('[M]ixed questions of law and fact are not appropriate for certification under *§1292(b)*.')

And further, see Mitre Sports International Ltd. v. HBO, Inc., 2014 U.S. Dist. LEXIS 12411, *7 (S.D.N.Y. 2014) (GBD): "That a defendant whose summary judgment motion is denied believes its previously-raised arguments demonstrate the accuracy of its position does not give rise to a substantial ground for difference of opinion." [footnote omitted]

And further, "[t]he use of §1292(b) is reserved for those cases where an intermediate appeal may avoid protracted litigation." Caruso v. City of New York, supra (citing Koehler v. Bank of Bermuda, Ltd., 101 F.3d 863, 865-66 (2d Cir. 1996).)  Or, as Judge Rakoff noted, certification should be denied where "the only real effect of certification would be to introduce delay, rather than reducing it." UMG Recordings, Inc. v. MP3.com, Inc., 2000 U.S.Dist. LEXIS 7439 (S.D.N.Y. 2000) (JSR) (denying motion by defendant MP3.com, Inc.) (citing Koehler,

5

supra).

And see, still further, Hongkong & Shanghai Banking Corp. Ltd. v. Brandt, 2017 U.S. Dist. LEXIS 213343, *12 (S.D.N.Y. 2017) (VEC), where Judge Caproni emphasized: "The second element, a substantial ground for a difference of opinion, 'must arise out of <u>a genuine doubt as to the correct applicable legal standard relied on in the order</u>.' [citation omitted]  Such a ground might exist for a difficult issue of first impression, but it is not sufficient that the relevant case law is less than clear or not wholly in accord." (citations omitted) (emphasis added).

And see, finally, this Court's conclusion in <u>In re Aluminum Warehousing Antitrust Litigation</u>, 2015 U.S. Dist. LEXIS 87382 , *22 (S.D.N.Y. 2015) (KBF):

> The Court has spent a great deal of time considering whether to certify interlocutory appeal here. The issue for the Court is whether generally— given the amount of resources to be spent on discovery, class certification, and dispositive motion practice—appellate review would provide the defendants with additional comfort that their resources were not being spent unnecessarily. On reflection, however, the Court has had to consider that this District has many cases of substantial size and it cannot be that size alone pushes a court towards certification. It may be that there are cases where a combination of a close call and size leads to such a result—but here, the Court believes that only 50% of that equation has been met.  [footnote omitted].

And on the issue of a requested stay pending a proposed interlocutory appeal, Circuit Judge Chin (sitting by designation) applied the governing law as follows:

> Nor has L-7 shown a basis for a stay pending appeal. L-7 has fallen far short of showing <u>irreparable injury</u> absent a stay. The cost-of-trial argument for irreparable injury that L-7 advances has been repeatedly rejected in other cases. See, e.g., *AVCO Fin. Corp. v. Commodity Futures Trading Comm'n,* 929 F. Supp. 714, 719 (S.D.N.Y. 1996) ("[M]ere litigation expense, even if it is substantial, does not constitute 'irreparable injury'" [citations omitted]   (A]ny injury arising from the delay and cost of litigation [is] legally insufficient to establish irreparable harm.") <u>Nor has L-7 shown a likelihood of success on the merits of an appeal, nor has it shown that a stay is in the public interest</u>.

<u>L-7 Designs, Inc. v. Old Navy, LLC</u>., 964 F.Supp.2d 299, 320 (S.D.N.Y. 2013) (DC) (emphasis added).

Alas, presumably wishing it away, the defendants' brief on this motion is almost completely bereft of even an acknowledgment of all that applicable law, choosing instead to cherry-pick isolated phrases from the very few ("exceptional" "genuine doubt") cases where that applicable law was found to be satisfied.   But, of course, all that law still governs this motion.

THIS CASE

As before, the defendants seem in complete denial with respect to what <u>Perfect 10</u> was actually about -- and what it wasn't.  As the Court's Order explicitly emphasized, that opinion's opening sentence made its subject and purpose beyond dispute or confusion:  "In this appeal, we consider a copyright owner's efforts to stop an Internet search engine from facilitating access to infringing images."  Further, as the Court's Order also explicitly emphasized, the linchpin of that decision were the bedrock facts that a) only in response to volitional user search requests, Goo-

7

gle's Search Engine generated reduced-sized low-resolution "thumbnails" of the photos searched for, and b) only in response to volitional user "clicking" on the thumbnails, as a result of computer code "instructions" placed within the thumbnails (which instructions had to be acted on by the user), could the individual user see full-size versions of the photos.

And, as is also explicitly emphasized in the Court's Order, the underlying facts of this case could not be more different: a) Instead of being search engines, the defendants are for-profit editorial websites that prominently display editorial content to attract visitors and support their advertising; b) they volitionally and specifically and unilaterally reached-out for and then prominently displayed on their websites for all to see the plaintiff's Photo; c) they offered no opportunity to their visitors to search for photos like the plaintiff's; d) they offered no thumbnails for their visitors to review and choose from; e) they offered no opportunity to their visitors to choose whether or not to view a full version of a Photo; f) they offered no "instructions" to be acted on by their visitors if they chose to do so; and g) they simply decided for themselves to prominently display on their own websites in full-size and full-color the Photo, obviously believing that doing so would further their profit-seeking purposes.

The defendants' motion not only ignores the well-established law that governs this motion, it also ignores the actual facts of Perfect 10 and the actual facts of their own conduct in prominently displaying the plaintiff's Photo.  Moreover, as the Court's Order emphasized, the Server Test is essentially (and understandably) a legal orphan, with no case – repeat no case – even coming close to applying it to a fact-pattern even arguably analogous to this one, i.e., with no thumbnails, no volitional clicking, and no "instructions" to be acted on by the user.  And, of course, the only case – in addition to the Court's Order – to consider the applicability of Perfect

10 to facts analogous to those here forcefully rejected that applicability as legally untenable. (<u>The Leader's Institute, LLC v. Jackson</u>, 2017 WL 5629514 (N.D. Tex. Nov. 22, 2017).) In short, no case – repeat no case – even arguably supports the defendants' attempt to engraft (the dubious holding of) <u>Perfect 10</u> onto the actual facts of this case. And this exposes as utterly baseless the defendants' endlessly repeated proclamations that <u>Perfect 10</u> and its Server Test were "settled law." The truth is exactly the opposite.

THIS MOTION

Using the established three-part framework for motions under Section 1292(b) -- the statute itself does not separate the factors in that way -- we will separately discuss each of those factors as they pertain to this case.

"Controlling Question of Law"

The first §1292(b) factor that must be satisfied is whether the Court's Order "involves a controlling question of law." That factor simply cannot be met here.

First, it must be determined what that "question" is. Significantly, the defendants' motion nowhere explicitly articulates what they believe the "controlling question of law" is. Instead, they seem to be saying that the Court committed reversible error by declining to be the first and only Court in the country to create by judicial fiat a blanket industry-wide immunity from copyright infringement for websites like them that feel free to help themselves to every -- repeat every -- copyrighted photo they may see and covet on the Internet. According to the defendants' motion, the Court's refusal to judicially create their requested wholesale immunity from infringement -- based entirely on a single search-engine user-click-required case -- is the "controlling question of law" that requires immediate review by the Second Circuit.

9

Wholly apart from the arrogance -- the chutzpah -- of declaring the Court's quintessential exercise of judicial care and restraint as unforgivable judicial malpractice, it is perfectly clear that that is not remotely the real question (at the appropriate time) to be submitted to the Circuit. This is because it is beyond dispute that the Court's Order did <u>not</u> rule on whether the Server Test in the abstract, as created by the Ninth Circuit, is good law. Plainly, the Court's Order went out of its way <u>not</u> to decide that issue.

And it is also clear that the Court's Order did <u>not</u> adjudicate whether the Server Test as actually applied in <u>Perfect 10</u> is good law. Here too, the Court's Order went out of its way to leave open -- and <u>not</u> determine -- that issue. For example: "[T]he Court agrees that there are critical factual distinctions between <u>Perfect 10</u> and this case such that even if the Second Circuit were to find the Server Test consistent with the Copyright Act, it would be inapplicable here. . . . In <u>Perfect 10</u>, Google's search engine provided a service whereby the user navigated from webpage to webpage, with Google's assistance. This is manifestly not the same as opening up a favorite blog or website to find a full color image awaiting the user, whether he or she asked for it, looked for it, clicked on it, or not. Both the nature of Google Search Engine, as compared to the defendant websites, and the volitional act taken by users of the services, provide a sharp contrast to the facts at hand."[1]

---

[1] This means, contrary to the defendants' wishful thinking and to some of the superficial commentary in response to the Court's Order, that there is absolutely no "conflict" between the Order and the Ninth Circuit's <u>Perfect 10</u>. The only even hypothetical "conflict" might arise if the defendants' utterly-unsupported-by-any-case wishful thinking that <u>Perfect 10</u> somehow must be applied beyond its own search-engine click-required facts to immunize any and every species of embedding, including the defendants' wholesale helping themselves to every copyrighted photo they see on the Internet, was curently the law in the Nith Circuit. But so far, at least, the Ninth Circuit has given no indication that it will so expand <u>Perfect 10</u>. And until it does, any claim of "conflict" is manifestly baseless.

So what then is the "question" that would be presented -- at the appropriate time -- to the Second Circuit?  It can only be this:  <u>Whether, on the specific facts underlying this case, and on the law governing the defendants' "embed" motion, the Court erred in declining to apply the Server Test to those facts?</u>  And, quintessentially, that is the opposite -- the antithesis -- of the kind of "pure question of law" contemplated by the first prong of §1292(b).  And, further, what would the answer to that question "control"?  Only cases presenting the same or similar facts.

As demonstrated above, the Court's Order was explicitly based on -- governed by -- the <u>facts</u> underlying the "embed" issue <u>in this case</u>.  But, as <u>Belton</u>, <u>supra</u>, made clear, in such cases an interlocutory appeal would not present a 'pure question of law' that the Second Circuit 'could decide quickly and cleanly without having to study the record.'" [citation omitted] . . . .  ('Because the court's determination was the result of a fact-specific inquiry, it did not involve a 'controlling question of law.') [citation omitted] ('[M]ixed questions of law and fact are not appropriate for certification under *§1292(b)*.')

Moreover, it must be asked: "controlling" over what?  As the defendants acknowledge, even if the Court's Order were certified now to the Second Circuit, and even if that Court reversed (based on whatever it considered the "question" on appeal to be), that ruling would have no impact whatever on all the remaining claims that will still have to be litigated against fully half of the remaining defendants.  Not exactly "controlling" as to all those remaining claims.

"Substantial Ground for Difference of Opinion"

The second §1292(b) factor assumes the existence of a "controlling question of law" and then requires that with respect thereto "there is a substantial ground for difference of opinion." But, even assuming the Court's ultimate ruling in its Order -- denying the defendants' motion for

11

summary judgment on the embed issue based on the facts underlying the defendants' substantive motion -- provides such a "controlling question of law," the Order conclusively established that there is not even an insubstantial ground for a "difference of opinion" on that ultimate ruling.

As discussed above, the actual "question" that would (at some point) be presented to the Second Circuit is not whether the Server Test in the abstract is good law or even whether the Server Test as applied to the facts in <u>Perfect 10</u> is good law. Instead, as indicated above, and in light of the careful and limited way the Court's Order actually addressed and resolved that ultimate issue, the only plausible "question" is whether, on the specific facts underlying this case, and on the law governing the defendants' summary judgment motion, the Court erred in declining to apply the Server Test to those facts. And, we submit, there is simply no "substantial ground for difference of opinion" -- and no basis for any "genuine doubt" on the part of the Court -- with respect to its ultimate ruling on that fact-based and fact-specific issue.

Of course, the Court's Order was not universally applauded. Certainly websites like those owned by the defendants that have for over a decade freely helped themselves to the copyrighted property of others through "embedding" are not happy. And the very vocal cohort of those who believe that the Internet and everything on it should be "free" -- see, <u>e.g.</u>, <u>Should Internet Content Be Free? The Best Model to Save Newspapers, Books, and Music in the Digital Age</u>, https://www.huffingtonpost.com/anis-shivani/whose-model-can-save-book_b_255497.html) -- and who have little regard for the notion of copyright ownership, are apoplectic.

But such predictable unhappiness -- accompanied as it has been by hysterical cries of doom and gloom -- are manifestly not what the second factor of §1292(b) is all about. And, on the legal merits, we will only reiterate here that the Server Test is essentially a legal orphan with

no case – repeat no case – even coming close to applying it to a fact-pattern even arguably analogous to the one here. In short, again, no case even arguably supports the defendants' desire to engraft (the dubious holding of) Perfect 10 onto the actual facts of this case, thus precluding the most common basis for a "substantial difference of opinion."

"Materially Advance the Ultimate Termination of the Litigation"

The third §1292(b) factor that must be satisfied is whether "an immediate appeal from [the Court's Order] may materially advance the ultimate termination of the litigation." (emphasis added) The answer to this factor couldn't be clearer.

At present there are six remaining defendants in this case: BREITBART NEWS NETWORK, LLC; HEAVY, INC.; TIME, INC.; YAHOO, INC.; GANNETT COMPANY, INC.; and NEW ENGLAND SPORTS NETWORK, INC. At most, a hypothetical interlocutory reversal of the Court's Order -- without any other remand for further proceedings, etc. -- would result in the departure of only half of the remaining defendants (HEAVY, GANNETT, AND NESN.[2] Which means that the case will necessarily proceed in full on every remaining issue -- including "the very serious and strong" defenses mentioned in the Court's Order -- which means full discovery (including documents and depositions); expert reports and depositions; extensive

---

[2] Any such reversal would have no effect whatever on plaintiff's claim against defendant BREITBART, which did not embed at all. Otherwise, we will quote here the relevant part of the moving defendants' footnote 1 in their initial brief (Docket No. 121), but with references to since departed defendants omitted: "Defendants Heavy, Gannett, and NESN are moving for full summary judgment dismissing all claims against them. Certain of the Defendants, namely Time and Yahoo, are moving for summary judgment with respect to only a subset of alleged uses, since not all of these Defendants' alleged uses involved embedded tweets. In particular, . . . Time is moving for summary judgment as to the article published by FanSided . . . but not the article published by SI.com . . . Yahoo is moving for summary judgment as to the article published by Yahoo Sports . . . and not for the article published by Yahoo News . . .

motion practice (including dispositive motions); a jury trial; and almost certainly (further) appeals to the Second Circuit. Thus, if the Court were to grant the instant motion to certify, that will essentially guarantee that there will be (at least) two separate appeals in this litigation, thus (unnecessarily) doubling the appellate time, effort and expenditure of resources for all concerned, which is of course a major reason such certifications are "as a general matter . . . strongly disfavored in federal practice."

This factor is expressly limited to "the ultimate termination of the litigation," and does not (at least overtly) contemplate the removal of a few parties along the way. Thus, even if three defendants left the case after the interlocutory appeal, there is simply no way that appeal -- especially if the requested stay is granted -- could even arguably advance "the ultimate termination of the litigation." The defendants' half-hearted suggestion that about a year from now -- after the proposed interlocutory appeal is briefed, argued and decided -- the hypothetical departure, then, of three defendants (leaving three) will somehow advance "the ultimate termination of the litigation" defies experience and belief.

The Requested Stay

Talk about chutzpah. Pretty much in the same breadth that the defendants solemnly argue that an interlocutory appeal will actually advance "the ultimate termination of the litigation," they also seek a stay of all proceedings that will guarantee the exact opposite. Are they serious?

In any event, as Judge Chin declared (quoted at the outset of this brief) the advocate of a proposed stay must establish that it will prevent "irreparable injury," that it has "shown a likelihood of success on the merits of an appeal," and that a stay would be in the "public interest," all of which the defendants sensibly do not even try to establish. Enough said.

14

CONCLUSION

For all of the foregoing reasons, the defendants' motion for a §1292(b) certification and a stay should be denied.

Dated: March 8, 2018

                                                Respectfully submitted,

                                                s/ Kenneth P. Norwick
                                                Kenneth P. Norwick
                                                NORWICK & SCHAD
                                                110 East 59th Street
                                                New York, NY 10022
                                                (212) 751-4440
                                                ken@norwickschad.com
                                                Attorneys for Plaintiff