**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
JUSTIN GOLDMAN,                                          :
                                                         :
                  Plaintiff,                     :   Case No. 17 Civ. 3144 (kbf)
                                                         :
  -against-                                             :
                                                         :
BREITBART NEWS NETWORK, LLC; HEAVY, INC.;                :
TIME, INC.; YAHOO, INC.; VOX MEDIA, INC.;                :
GANNETT COMPANY, INC.; HERALD MEDIA, INC.;               :
BOSTON GLOBE MEDIA PARTNERS, LLC; NEW                    :
ENGLAND SPORTS NETWORK, INC.,                            
                                                         
             Defendants.
-------------------------------------------------------------------X

**AMICUS CURIAE BRIEF OF NEWS MEDIA ALLIANCE, ASSOCIATION OF
MAGAZINE MEDIA, E.W. SCRIPPS COMPANY, ELECTRONIC FRONTIER
FOUNDATION AND PUBLIC KNOWLEDGE IN SUPPORT OF DEFENDANTS'
MOTION TO CERTIFY DECISION FOR INTERLOCUTORY APPEAL UNDER 28
U.S.C. § 1292(b)**

Toby Butterfield, Esq.
Moses & Singer LLP
405 Lexington Avenue
New York, NY  10174
Telephone: (212) 554-7800
Facsimile: (212) 554-7700
tbutterfield@mosessinger.com

*Attorneys for Amici Curiae News Media
Alliance, Association of Magazine Media, E.W.
Scripps Company, Electronic Frontier
Foundation, and Public Knowledge*

**TABLE OF CONTENTS**

**Page**

I.      STATEMENT OF INTEREST OF AMICI CURIAE ..........................................................1

II.     BACKGROUND ..............................................................................................................4

III.    ARGUMENT.....................................................................................................................6

        A.      The Order Will Require Internet Users to Substantially Alter the Ways in
                Which They Present Content Online .....................................................................6

        B.      Interlocutory Appeal of the Order Serves the Interests of Both Copyright
                Plaintiffs and Media Organizations By Resolving Uncertainty as to the
                Continued Application of the Server Test in This District .....................................9

IV.     CONCLUSION................................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Flava Works, Inc. v. Gunter*,
   689 F.3d 754 (7th Cir. 2012) ...................................................................................7

*Kelly v. Arriba Soft Corp.*,
   336 F.3d 811 (9th Cir. 2003) ...................................................................................6

*Levey/Um, Inc. v. Fox Sports Interactive Media, LLC*,
   2014 WL 3368893 (N.D. Ill. July 8, 2014) ............................................................7

*Live Face on Web, LLC v. Biblio Holdings LLC*,
   2016 WL 4766344 (S.D.N.Y. Sept. 13, 2016) .......................................................7

*MyPlayCity, Inc. v. Conduit Ltd.*,
   2012 WL 1107648 (S.D.N.Y. Mar. 30, 2012) ........................................................7

*Nakada+ Associates, Inc. v. City of El Monte*,
   2017 WL 2469977 (C.D. Cal. June 2, 2017) ..........................................................7

*Perfect 10, Inc. v. Amazon.com, Inc.*,
   508 F.3d 1146 (9th Cir. 2007) ..........................................................................6, 7, 8

*Totally Her Media, Inc. v. BWP Media _USA, Inc.*,
   2015 WL 12659912 (C.D. Cal. Mar. 24, 2015) .....................................................7

**Statutes**

28 U.S.C. § 1292(b) .......................................................................................................2

Copyright Act .....................................................................................................6, 8, 9, 11

DMCA .........................................................................................................................5, 10

**Other Authorities**

Brian Feldman, *How a Photo of Tom Brady Could Change the Way That You See
   the Internet*, N.Y. Mag. (Feb. 16, 2018),
   http://nymag.com/selectall/2018/02/court-rules-that-embedding-tweets-could-
   violate-copyright.html ............................................................................................9

Eriq Gardner, *Judge Rules News Publishers Violated Copyright by Embedding
   Tweets of Tom Brady Photo*, Hollywood Reporter (Feb. 15, 2018),
   https://www.hollywoodreporter.com/thr-esq/judge-rules-news-publishers-
   violated-copyright-by-embedding-tweets-tom-brady-photo-1085342 ...................8

i

Daniel Nazer, *Federal Judge Says Embedding a Tweet Can Be Copyright
   Infringement*, Electronic Frontier Foundation (Feb. 15, 2018),
   https://www.eff.org/deeplinks/2018/02/federal-judge-says-embedding-tweet-
   can-be-copyright-infringement .......................................................................................9

## I.      STATEMENT OF INTEREST OF AMICI CURIAE

News Media Alliance ("NMA"), Association of Magazine Media f/k/a Magazine
Publishers of America ("MPA"), E.W. Scripps Company ("Scripps"), Electronic Frontier
Foundation ("EFF"), and Public Knowledge hereby respectfully submit this brief as *Amici
Curiae* in the above-captioned case, in support of the Motion to Certify Decision for
Interlocutory Appeal Under 28 U.S.C. § 1292(b) (ECF No. 173) filed by defendants Heavy, Inc.,
Time Inc., Oath Holdings Inc., Gannet Company, Inc., and New England Sports Network, Inc.
(collectively "Defendants").

NMA, originally known as the Newspaper Association of America, was established in
1992 and is currently the news media industry's largest trade organization. NMA's members
represent nearly 2,000 diverse news organizations in the United States, from digital-only to print
news, from large news organizations to local news outlets. NMA works with its members, as
well as partner organizations, to advance the news industry through advocacy and critical
research, focusing on issues such as freedom of the press, public policy concerns, and legal
matters. Two particular areas of focus of NMA's advocacy work are intellectual property matters
and technology matters.

MPA, established in 1919, is a nonprofit organization representing print and digital
magazine media companies. MPA represents 265 domestic, associate, and international
members, and is the primary advocate for the magazine media industry. MPA's work focuses on
public policy agendas and issues that are of common concern to magazine media companies.
Two primary areas of focus for MPA's advocacy work are First Amendment issues and
intellectual property issues that affect the magazine media industry.

Scripps owns and operates 33 local broadcast television stations, including WKBW-TV,
an ABC affiliate in Buffalo. These stations operate websites and social media platforms

providing news and information to their viewers. Scripps also serves audiences and businesses through a growing portfolio of media brands including Newsy, the next-generation national news network; podcast industry leader Midroll Media; and fast-growing national broadcast networks Bounce, Grit, Escape and Laff.

EFF is a non-profit civil liberties organization that has worked for twenty-seven years to protect consumer interests, innovation, and free expression in the digital world. EFF and its more than 36,000 dues-paying members have a strong interest in helping the courts and policymakers strike the appropriate balance between intellectual property and the public interest, and ensuring that copyright law serves the interests of creators, innovators, and the general public. EFF is also committed to protecting online press freedom, and has worked for decades to ensure that spurious intellectual property claims are not used to limit that freedom.

Public Knowledge is a non-profit organization that is dedicated to preserving the openness of the internet and the public's access to knowledge, promoting creativity through balanced intellectual property rights, and upholding and protecting the rights of consumers to use innovative technology lawfully. Public Knowledge advocates on behalf of the public interest for a balanced copyright system, particularly with respect to new and emerging technologies.

*Amici* file this brief because the Court's Opinion and Order of February 15, 2018 (ECF No. 169) (the "Order") rejected the "server test" for copyright infringement, which had been taken as settled law for over a decade.  In so doing, the Court's ruling has already created substantial uncertainty for media organizations, citizen journalists, educators, artists and activists, all of which must address both who controls and/or is responsible for infringing content, and what if anything should be done about all the content they have already generated and published containing embedded content.  Media organizations and ordinary internet users

who produce and share digital content- from bloggers to libraries to educators and activists –
have all relied for many years on the protections of the established "server test" in their everyday
work, which frequently requires them to refer to content on social media platforms such as
Twitter, Facebook, and YouTube.  They have for years done so via "embedded" or "in-line"
links, and indeed these platforms are even set up to promote such embedding, via technological
tools designed to allow such sharing of information.

      The Order's abandonment of the established server test puts all of this valuable activity at
risk. With respect to the media organizations, for example, the Order suddenly imposes liability
for copyright infringement in this jurisdiction for the industry-standard practice of using such in-
line links to others' digital content in a manner that is consistent with the terms and conditions of
the hosting platform and is enabled and actively encouraged by the platforms.  All parties
typically assume that if the material they are linking to is in fact infringing (despite the
platforms' uniform requirement that uploads be legally authorized), then the infringing content
will come down swiftly, because of the requirement that the DMCA imposes in exchange for
safe harbors from copyright liability.  Such requirements include the use of standard technical
measures, which platforms are required to use to filter out infringing content; workable
implemented policies against serial offenders; and the time limits that require a platform to take
down infringing material promptly.  Platforms enforce all these and many other requirements,
under pain of losing the DMCA's "safe harbor" immunity from liability for damages for hosting
infringing content uploaded at the direction of others.[1]

---

[1] In line linking also serves the interest of the owner of the content, because the infringing
content will therefore automatically disappear from all sites which link to it when the platform
hosting it takes it down.

In-line linking from platforms that explicitly permit it is an essential part of the modern online ecosystem. Social media platforms such as Twitter, Facebook, and YouTube not only have terms of use that allow for the practice of in-line linking, but also offer tools that facilitate in-line linking. Producers of digital content such as *Amici* and the users they represent did not anticipate, prior to the Order, that mere publication of an in-line link in these circumstances could result in an infringement lawsuit – particularly where that link points to content hosted on a social media platform that is entirely outside of the linker's control and that explicitly allows for (and encourages) the use of in-line links. Given that direct infringement is a strict liability tort, media companies, individuals and other entities have relied on the server test to protect them from potentially crippling damages awards and to ensure that any liability is placed on the parties who actually control the posting of the material in issue.

Given *Amici's* roles in safeguarding and promoting the broad interests of the news and media industries, of journalism as an institution that exists to propagate news and information, and of the general public that depends on those industries and institutions, they can provide unique and important insights for the Court in considering this issue. Accordingly, *Amici* ask this Court to grant Defendants' Motion to Certify Decision for Interlocutory Appeal.

Counsel for Plaintiff and Defendants consented to the filing of this motion. No counsel for any party authored this brief in whole or in part, and no entity or person, aside from *Amici* and their counsel, made any monetary contribution toward the preparation or submission of this brief.

## II.        **BACKGROUND**

In-line linking is a process that creates the *appearance* that an in-lined graphic from a source website is a seamless part of a second website, but without actually copying the graphic to the second website's server. *See Kelly v. Arriba Soft Corp.,* 336 F.3d 811, 816 (9th Cir. 2003).

The operative version of the Copyright Act was drafted in the mid-1970s and went into effect in 1978, at a time when the digital technologies of today only existed in science fiction. In the early years after technology and the internet changed the ways that people communicate and consume content, courts struggled to apply the analog principles of the Copyright Act to the realities of the digital world, and concepts that once seemed fairly straightforward – such as what it means to "reproduce" or "display" a work- became the subject of intense debate and case law.

Against this backdrop, in 2007, the Ninth Circuit issued its decision in *Perfect 10, Inc. v. Amazon.com, Inc.* (*"Perfect 10"*). A central issue in that case was whether in-line links to content that is hosted on another party's server, could be considered a "display" for the purpose of a direct copyright infringement analysis. *Perfect 10, Inc. v. Amazon.com, Inc.,* 508 F.3d 1146 (9th Cir. 2007). The court concluded that it could not:

> Because Google's computers do not store the photographic images, Google does not have a copy of the images for purposes of the Copyright Act ... and thus cannot communicate a copy. Instead of communicating a copy of the image, Google provides HTML instructions [via in-line linking] that direct a user's browser to a website publisher's computer that stores the full-size photographic image. Providing these HTML instructions is not equivalent to showing a copy.

*Id.* at 1160-61. This doctrine – that the owner of a website that does not *store* an image on its own server, but rather provides an *in-line link* to it, is not displaying the image for purposes of direct copyright infringement – is known as the "server test." *Id.* at 1159.

In the decade that followed the 2007 *Perfect 10* decision, courts considering this issue, including courts in this District, have likewise applied the reasoning of the server test. *See e.g. Flava Works, Inc. v. Gunter,* 689 F.3d 754 (7th Cir. 2012); *Pearson Educ., Inc. v. lshayev,* 9 F. Supp. 3d 328, 338 (S.D.N.Y. 2014); *Live Face on Web, LLC v. Biblio Holdings LLC,* 2016 WL 4766344, at *4 (S.D.N.Y. Sept. 13, 2016); *Grady v. lacullo,* 2016 WL 1559134, at *5 (D. Colo.

5

Apr. 18, 2016); *Totally Her Media, Inc. v. BWP Media _USA, Inc.,* 2015 WL 12659912 (C.D. Cal. Mar. 24, 2015); *Levey/Um, Inc. v. Fox Sports Interactive Media, LLC,* 2014 WL 3368893, at *5 (N.D. Ill. July 8, 2014); *MyPlayCity, Inc. v. Conduit Ltd.,* 2012 WL 1107648, at *12 (S.D.N.Y. Mar. 30, 2012), *adhered to on recons.,* 2012 WL 2929392 (S.D.N.Y. July 18, 2012); *Nakada+ Associates, Inc. v. City of El Monte,* 2017 WL 2469977, (C.D. Cal. June 2, 2017).

Relying on this body of law pertaining to the server test, social media platforms such as Twitter, Facebook, and YouTube have developed terms of use that explicitly authorize in-line linking to content posted to such social media platforms. Users who open accounts on these social media platforms affirmatively agree to these terms of use, which govern their submission of content, including photographs, and their use of the service. These social media platforms also now offer tools that help facilitate in-line linking, in recognition of the value of allowing information to be disseminated quickly and freely (but while still allowing the content owner a level of control over the content). Media organizations and other internet users all rely on these tools, as well as the long-settled body of law that supports such uses.

The Order is a substantial departure from this body of law that calls into question the continued application of the server test.  It has dangerous and widespread implications for *Amici* and the users that they represent, who will now have to rethink the manner in which they present and comment on content hosted elsewhere.

## III.     ARGUMENT

### A.     The Order Will Require Internet Users to Substantially Alter the Ways in Which They Present Content Online

In the more than 10 years that have elapsed since the issuance of the *Perfect 10* decision, media organizations producing online digital content, as well as social media platforms and their users, have uniformly taken the decision as settled law, and relied on its holding in producing

online digital content. The server test allowed them to quickly and freely report on matters and to disseminate news and information to the public without risking copyright infringement claims, and without the need to determine whether the newsworthy content of third parties might be infringing and thus might run afoul of the Copyright Act if uploaded onto the media organization's own server.

The Order was met with widespread consternation because if it is indeed the law, then media organizations, social media platforms and Internet users must now substantially alter the ways in which they display content online. Such reorganization of how developing news and content is distributed will have a marked impact on how media organizations report, and will potentially chill the free dissemination of information. One reporter noted that the Order would "potentially disrupt[] the way that news outlets use Twitter and cause[] many in technology to re-examine ubiquitous practices from embedding to linking." Eriq Gardner, *Judge Rules News Publishers Violated Copyright by Embedding Tweets of Tom Brady Photo*, Hollywood Reporter (Feb. 15, 2018), https://www.hollywoodreporter.com/thr-esq/judge-rules-news-publishers-violated-copyright-by-embedding-tweets-tom-brady-photo-1085342. *See also* Daniel Nazer, *Federal Judge Says Embedding a Tweet Can Be Copyright Infringement*, Electronic Frontier Foundation (Feb. 15, 2018), https://www.eff.org/deeplinks/2018/02/federal-judge-says-embedding-tweet-can-be-copyright-infringement (noting that the Order "threaten[s] the ubiquitous practice of in-line linking that benefits millions of Internet users every day"); Brian Feldman, *How a Photo of Tom Brady Could Change the Way That You See the Internet*, N.Y. Mag. (Feb. 16, 2018), http://nymag.com/selectall/2018/02/court-rules-that-embedding-tweets-could-violate-copyright.html (noting that the Order "has the potential to shake the very foundation on which the modern internet is built, changing the way websites from huge

publications to one-person blogs do business online"); Eric Goldman, *In-Line Linking May Be Copyright Infringement – Goldman v. Breitbart News*, Technology & Marketing Law Blog (Feb. 16, 2018), https://blog.ericgoldman.org/archives/2018/02/in-line-linking-may-be-copyright-infringement-goldman-v-breitbart-news.htm (suggesting that "a single infringing upload by a Twitter user potentially virally contaminates everyone else – potentially thousands of people – unwittingly using the embed feature, exposing all of them to financially crippling copyright litigation").   If indeed this court's Order is the correct interpretation of the Copyright Act, then media organizations and internet users all need to know that with certainty as soon as possible.

Complying with the law as announced in the Order would certainly disrupt media organizations' ability to report on matters, as they now already risk being charged with copyright infringement for every time they have embedded content or provided an in-line link to the material on which they were reporting. Media organizations reporting on such content are not as well placed as the platforms which host the content in question to determine whether content posted by third parties infringes a copyright.  YouTube, for example, operates and runs extremely sophisticated filters which compare everything uploaded to its system to similar content, and disables users from uploading and distributing material which obviously infringes on another's audio-visual or musical work.  Third party websites such as those the amici represent have no access to such filters, the content uploaded by others that it may infringe, or even the code of the particular content in question.  Rather than relying on these sophisticated tools, under the Order, they may have to simply rely on a determination of the *bona fides* of the person or organization who uploaded the content to which they are linking, or whether they are making fair use of the content, or must refrain from linking to or commenting on it at all.

The same holds true for bloggers, educators and activists who commonly use in-line links to share and comment on news, politics and culture.  The Order's abandonment of the server test alternatively requires all of these entities to devote substantial time to determining whether third party content is protected by copyright, thus delaying the dissemination of newsworthy content.

These impediments do not serve the purposes of copyright, and run contrary to the statutory scheme designed by Congress and implemented via the DMCA.  The DMCA is designed to place the responsibility for taking down infringing content on the platform that hosts the content itself, in response to a compliant DMCA notice, not those who discuss or point unwittingly to infringing posts uploaded by others. In an era when news is generated via social media websites (with social media used to garner support for protest movements, to reveal celebrity wedding and birth announcements, and now even to convey official presidential statements) and when individuals increasingly consume vital news and media online, the media must have the ability to quickly produce and disseminate quality, informative content that utilizes in-line links, without being hampered by the threat of copyright liability for referring to them.

**B.**     **Interlocutory Appeal of the Order Serves the Interests of Both Copyright Plaintiffs and Media Organizations By Resolving Uncertainty as to the Continued Application of the Server Test in This District**

Absent an immediate appeal of the Order, the continued application of the server test in this jurisdiction will remain unsettled during the pendency of this action. In the meantime, plaintiffs will inundate the courts in this District with copyright infringement lawsuits arising from the display of embedded content and in-line linking, uses which were previously not thought to constitute direct infringement.

An interlocutory appeal would serve the interests of both these potential plaintiffs and of media organizations and others displaying content online.  If the Order's apparent abandonment

of the server test is now the governing law in this District, media organizations need immediate confirmation that embedding and in-line linking constitute a display within the meaning of the Copyright Act, so that they can adjust their business practices to avoid liability. Conversely, if these practices do not constitute a display, potential plaintiffs need to know so that they will not expend limited resources and burden the courts with needless litigation.

Finally, the Order's apparent abandonment of the server test in the context of in-line links to social media content makes this only the second jurisdiction where the common practice of using such links would constitute unlawful copyright infringement. This departure from the settled law of other circuits has put *Amici* in an untenable position, given the interconnected and ubiquitous nature of the internet. We live in a digital age, when content produced in a newsroom or studio in one state can be saved to servers in another state, and can be accessed online by media consumers in any state across the nation. *Amici's* activities will be greatly disrupted by inconsistent rulings across the United States.

Such a circuit split is also impractical, as it is now unclear when or how exactly liability will attach, under the law of this jurisdiction, to anyone using such an in-line link. For example, would liability attach if the alleged infringer media organization is headquartered in New York? Or if the media organization was formed under New York law? Or if the media organization's servers are physically located in New York? Or if the content's copyright owner is a resident of New York? Or if the content is able to be viewed or accessed in New York? Practically, the Order will encourage forum-shopping, as copyright plaintiffs can bring online infringement actions in many courts.

Such uncertainty and confusion can be avoided entirely by granting the Defendants' request for an interlocutory appeal. If the Court were to deny the Defendants' motion, and the

Second Circuit were to later affirm the Order on other grounds, then the uncertainty and confused now faced by the *Amici* and others may persist for a number of years.

## IV.    <u>CONCLUSION</u>

In this age of technology-enhanced digital media consumption, *Amici's* members have come to rely on courts' uniform application of the server test every day by frequently and regularly using in-line links to refer to others' content on social media platforms in a manner that is fully consistent with the terms and conditions of the platforms and the expectations of users who agree to those terms. The Order's abandonment of this well-established test has created substantial uncertainty for both media organizations and copyright plaintiffs, and has the potential to create an untenable circuit split in which a common practice would constitute unlawful copyright infringement in this jurisdiction only. For these reasons, *Amici* respectfully request that the Court grant Defendants' Motion to Certify Decision for Interlocutory Appeal.

Dated: New York, New York
       March 13, 2018

MOSES & SINGER LLP

By: _____

Toby Butterfield
405 Lexington Avenue
New York, NY  10174
Telephone: (212) 554-7800
Facsimile: (212) 554-7700
tbutterfield@mosessinger.com

*Attorneys for Amici Curiae News Media
Alliance, Association of Magazine Media, E.W.
Scripps Company, Electronic Frontier
Foundation, and Public Knowledge*

11