UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

------------------------------------------------------------x
JUSTIN GOLDMAN,

                Plaintiff,

      v.

BREITBART NEWS NETWORK, LLC; HEAVY,      17 Civ. 3144 (KBF)
INC.; TIME, INC.; YAHOO, INC.; VOX MEDIA,
INC.; GANNETT COMPANY, INC.; HERALD
MEDIA, INC.; BOSTON GLOBE MEDIA
PARTNERS, LLC; NEW ENGLAND SPORTS
NETWORK, INC.,

                Defendants.
------------------------------------------------------------x

**REPLY MEMORANDUM IN FURTHER SUPPORT OF
DEFENDANTS' MOTION TO CERTIFY DECISION
FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b) AND
TO STAY PROCEEDINGS PENDING APPEAL**

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .................................................................................................................................. 3

    I.    THE ORDER DECIDED A PURE LEGAL QUESTION IN DIRECT CONFLICT WITH THE LAW IN THE NINTH CIRCUIT (AND OTHER JURISDICTIONS) ................................................................................................ 3

    II.    PLAINTIFF MISCONSTRUES THE "CONTROLLING QUESTION OF LAW" AND "ADVANCE[S] THE ULTIMATE TERMINATION OF LITIGATION" PRONGS OF SECTION 1292(b). ............................................... 6

    III.   THE COURT SHOULD EXERCISE ITS DISCRETION TO STAY THE ACTION PENDING INTERLOCUTORY APPEAL ........................................... 8

CONCLUSION ............................................................................................................................... 9

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*American Broadcasting Cos. v. Aereo, Inc.*,
    134 S. Ct. 2498 (2014) ...................................................................................................6

*In re Auction Houses Antitrust Litig.*,
    164 F. Supp. 2d 345 (S.D.N.Y. 2001), *aff'd*, 42 F. App'x 511 (2d Cir. 2002) .........................2

*Balintulo v. Daimler AG*,
    727 F.3d 174 (2d Cir. 2013) ..........................................................................................1

*Capitol Records, Inc. v. MP3tunes, LLC*,
    48 F. Supp. 3d 703 (S.D.N.Y. 2014), *aff'd in part, rev'd in part on other
    grounds*, 844 F.3d 79 (2d Cir. 2016) ..............................................................................6

*Capitol Records, LLC v. Vimeo, LLC*,
    972 F. Supp. 2d 537 (S.D.N.Y. 2013) ............................................................................8

*Cayuga Indian Nation of N.Y. v. Pataki*,
    413 F.3d 266 (2d Cir. 2005) ..........................................................................................1

*EM Ltd. v. Republic of Argentina*,
    473 F.3d 463 (2d Cir. 2007) ..........................................................................................1

*Fed. Hous. Fin. Agency v. UBS Americas, Inc.*,
    858 F. Supp. 2d 306 (S.D.N.Y. 2012) ............................................................................7

*Flo & Eddie, Inc. v. Sirius XM Radio Inc.*,
    No. 13 Civ. 5784(CM), 2015 WL 585641 (S.D.N.Y. Feb. 10, 2015) ..............................2, 8

*Glatt v. Fox Searchlight Pictures, Inc.*,
    811 F.3d 528 (2d Cir. 2016) ..........................................................................................1

*Greene v. Long Island R.R. Co.*,
    280 F.3d 224 (2d Cir. 2002) ..........................................................................................1

*Huminski v. Corsones*,
    396 F.3d 53 (2d Cir. 2005) ............................................................................................1

*Mei Xing Yu v. Hasaki Rest., Inc.*,
    874 F.3d 94 (2d Cir. 2017) ............................................................................................1

*Montesa v. Schwartz*,
    836 F.3d 176 (2d Cir. 2016)..................................................................................................1

*Perfect 10, Inc. v. Amazon.com, Inc.*,
    508 F.3d 1146 (9th Cir. 2007) ...................................................................................... *passim*

*Perfect 10 v. Google, Inc.*,
    416 F. Supp. 2d 828 (C.D. Cal. 2006) ................................................................................5, 6

*Shipping Corp. of India v. Jaldhi Overseas Pte Ltd.*,
    585 F.3d 58 (2d Cir. 2009)...................................................................................................1

*Sirius XM Radio, Inc. v. Flo & Eddie, Inc.*,
    No. 15-497, 2015 WL 3478159 (2d Cir. May 27, 2015).......................................................1, 8

*Weintraub v. Bd. of Educ. of City Sch. Dist. of City of New York*,
    593 F.3d 196 (2d Cir. 2010)..................................................................................................1

**Federal Statutes**

28 U.S.C. § 1292...............................................................................................................1, 2, 3, 8

28 U.S.C. § 1292(b) ........................................................................................................... *passim*

Defendants Heavy, Inc. ("Heavy"), Time Inc. ("Time"), Oath Holdings Inc. ("Yahoo"), Gannett Company, Inc. ("Gannett"), and New England Sports Network, Inc. ("NESN") (collectively, "Defendants") respectfully submit this reply memorandum of law in support of their motion for certification of an interlocutory appeal under 28 U.S.C. § 1292(b) and to stay proceedings in this case pending resolution of an interlocutory appeal (ECF No. 173).

## PRELIMINARY STATEMENT

Plaintiff's hyperbolic opposition ("Opp.") misses what is at issue on this motion. Under 28 U.S.C. § 1292(b), the Court may certify an order for interlocutory appeal when it "involves a controlling question of law as to which there is substantial ground for difference of opinion," and the Court determines that "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Plaintiff spends his brief relitigating the merits of the summary judgment motion the Court already decided, but does not (and cannot) credibly argue that the Court's decision on a critical issue of statutory interpretation does not meet the requirements of Section 1292.

Defendants do not deny that certifying decisions for interlocutory appeal is the exception, not the rule. Opp. at 3.[1] But this case presents precisely the type of "exceptional circumstances" that merit immediate appeal. *Id.* at 4 (citation omitted). The Court's Order involves a

---

[1] *But see, e.g.*, *Mei Xing Yu v. Hasaki Rest., Inc.*, 874 F.3d 94 (2d Cir. 2017); *Montesa v. Schwartz*, 836 F.3d 176, 194 (2d Cir. 2016); *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 533 (2d Cir. 2016); *Sirius XM Radio, Inc. v. Flo & Eddie, Inc.*, No. 15-497, 2015 WL 3478159, at *1 (2d Cir. May 27, 2015); *Weintraub v. Bd. of Educ. of City Sch. Dist. of City of New York*, 593 F.3d 196, 200 (2d Cir. 2010); *Shipping Corp. of India v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58, 66 (2d Cir. 2009); *EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 471 (2d Cir. 2007); *Cayuga Indian Nation of N.Y. v. Pataki*, 413 F.3d 266, 273 (2d Cir. 2005); *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005); *Greene v. Long Island R.R. Co.*, 280 F.3d 224, 229 (2d Cir. 2002) (all granting petitions for leave to take interlocutory appeal of orders certified under 28 U.S.C. § 1292(b)); *see also Balintulo v. Daimler AG*, 727 F.3d 174, 186 (2d Cir. 2013) (instructing that, when requirements of § 1292(b) are met, and the case "'involves a new legal question or is of special consequence,' then the district court 'should not hesitate to certify an interlocutory appeal'") (quoting *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 111 (2009)).

1

controlling question of law (purely presented, as there are no facts in dispute) as to which courts have disagreed and the resolution of which would remove half the Defendants from the case. And the Order has "practical importance going well beyond run-of-the-mill concerns of parties before the Court." *See In re Auction Houses Antitrust Litig.*, 164 F. Supp. 2d 345, 347–48 (S.D.N.Y. 2001), *aff'd*, 42 F. App'x 511 (2d Cir. 2002).

The Court's Order already has had—and will continue to have—a profound impact on all users of the Internet that extends far beyond these six Defendants' own interests. Among the most significant impacts of the Order is that Defendants—along with thousands of online publishers and millions of ordinary Internet users—are now potentially subject to direct copyright infringement liability for conduct that was, until the Order, entirely standard practice that was widely understood to be consistent with established law. As the proposed *amici* brief of the Electronic Frontier Foundation, *et al.* (ECF No. 178) makes clear, the Court's Order squarely rejecting the "server test" in connection with the display right as applied to online publishers has had an immediate impact on the practices of online publishers.[2] All internet users would benefit from "authoritative guidance from the Second Circuit" to "help resolve those actions quickly and consistently." *Flo & Eddie, Inc. v. Sirius XM Radio Inc.*, No. 13 Civ. 5784(CM), 2015 WL 585641, at *2 (S.D.N.Y. Feb. 10, 2015) (granting Section 1292 motion to certify question of public performance rights in pre-1972 sound recordings in light of likely "follow-on actions" that would result from court's original decision).

The Court is well aware of the parties' respective positions on the merits of the server test as applied to this case. Accordingly, in this reply, Defendants limit their response to Plaintiff's

---

[2] The fact that *Perfect 10* remains the law in the Ninth Circuit does not diminish the profound impact of the Order given the global nature of the Internet. Even a publisher located within the Ninth Circuit may well be sued in other jurisdictions where its website is accessible, forcing online publishers to alter their practices regardless of whether they are based in the Southern District of New York.

arguments that the requirements of Section 1292 have not been met here. Defendants recognize that the Court retains full discretion whether to certify the Order for interlocutory appeal. But Defendants respectfully submit that the Order readily qualifies for the exercise of that discretion and urge the Court to grant Defendants the opportunity to seek further guidance on this critical issue from the Second Circuit.

## ARGUMENT

### I. THE ORDER DECIDED A PURE LEGAL QUESTION IN DIRECT CONFLICT WITH THE LAW IN THE NINTH CIRCUIT (AND OTHER JURISDICTIONS)

There can be no serious dispute that the Court's Order decided a critical legal question, and that the Court's resolution of that question conflicts with the Ninth Circuit's holding in *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007). Plaintiff's attempt to cabin that decision (and the Court's Order) to narrow factual situations ignores the holdings in *Perfect 10* and the Order, both of which have wide (and directly conflicting) implications for online publishers.

Plaintiff asserts that Defendants did not "explicitly articulate[] what they believe the 'controlling question of law' is." Opp. at 9. That is erroneous. As explained in their opening brief, the legal question that Defendants believe can and must be addressed by the Second Circuit is ***whether a website publisher that inline links to content from a third party website, without ever hosting or transmitting the content, has engaged in a public display of that content under the Copyright Act***. *See* Defs. Mem. (ECF No. 174) at 5-6.

In *Perfect 10*, the Ninth Circuit's holding on this question of statutory interpretation was crystal clear:

> a computer owner that stores an image as electronic information and serves that electronic information directly to the user ("i.e., physically sending ones and zeroes over the [I]nternet to the user's browser") is displaying the electronic

3

> information in violation of a copyright holder's exclusive display right. Conversely, the owner of a computer that does not store and serve the electronic information to a user is not displaying that information, even if such owner in-line links to or frames the electronic information.

508 F.3d at 1159 (internal citations omitted). The Ninth Circuit grounded this holding squarely in its interpretation of the terms "display," "copies," and "fixed" as defined by the Copyright Act. *Id*. at 1160-61. The court explained that, when a website publisher inline links to images stored on another website, it does not "have a copy of the images for purposes of the Copyright Act," "cannot communicate a copy," and therefore is not the party that "displays" the image. *Id.* (citing 17 U.S.C. § 101). The court acknowledged that, although inline linking[3] "may *facilitate* the user's access to infringing images … , such assistance raises only contributory liability issues and does not constitute direct infringement of the copyright owner's display rights." *Id*. at 1161 (emphasis added) (internal citations omitted).

In the Order, the Court held the opposite: "the physical location or possession of an image" does not "determine who may or may not have 'displayed' a work within the meaning of the Copyright Act." Order at 17. Therefore, the Court held, inline linking to a tweet containing a photo from social media could subject a website publisher to liability for *direct* infringement of the public display right. *Id.* The Court based its decision on "[t]he plain language of the Copyright Act, the legislative history undergirding its enactment, and subsequent Supreme Court jurisprudence." Order at 17. The Court did not address the Ninth Circuit's holding that the appropriate legal framework for any claim against the party providing the inline link would be a contributory liability analysis.

Although there are undoubtedly factual distinctions that can be drawn between *Perfect 10*

---

[3] As the Court acknowledged, inline linking "works like embedding," and is legally indistinguishable. Order at 11.

and this case, the Court's Order rejects the clear rule that the Ninth Circuit applied to online copyright infringement, which that court referred to as the "server test."  To whatever extent the specific context of search engines informed the *Perfect 10* court's overall approach to the case (and directly affected its resolution of other issues, such as fair use), the Ninth Circuit's adoption of the server test as consistent with the Copyright Act was, by its terms, not limited to a specific context, and had not been interpreted by other courts as being so limited until the Order.[4]

The Court also diverged from the Ninth Circuit on the broader legal question of how decisive the user's subjective experience should be in determining whether a website has implicated the public display right.  In holding that inline linking was not a "public display" by the publisher of the linking website, the *Perfect 10* court acknowledged that Google's inline linking "gives the impression that Google is showing the image within a single Google webpage."  508 F.3d at 1161.  However, "[w]hile in-line linking and framing may cause some computer users to believe they are viewing a single Google webpage, the Copyright Act, unlike the Trademark Act, does not protect a copyright holder against acts that cause consumer confusion."  *Id.*

The district court in *Perfect 10* described the potential alternative to the server test as an "incorporation test," which is based on a "purely visual perspective," as opposed to the more "technological perspective" that underlies the server test.  *Perfect 10 v. Google, Inc.*, 416 F. Supp. 2d 828, 839 (C.D. Cal. 2006).  The court weighed the pros and cons of the two approaches and concluded that the server test was the better approach, observing that "[t]o adopt the incorporation test would cause a tremendous chilling effect on the core functionality of the

---

[4] To whatever extent the Court determined that the post-*Perfect 10* cases cited by Defendants were distinguishable (*see* Order at 12–15), those cases arose in a wide variety of factual situations, far beyond the "search-engine click-required" context in which Plaintiff seeks to limit the server test's applicability.  Opp. at 10 n.1.

5

web—its capacity to link, a vital feature of the internet that makes it accessible, creative, and valuable. *Id.* at 840.  Notably, the court illustrated these principles with a hypothetical example that is on all fours with this case—a website publisher that chose to incorporate a specific photo on a webpage via either inline linking to (*i.e.*, embedding) or hosting the content. *Id.* at 839–40 (discussing hypothetical "SoccerMANIA.com" incorporating photo of Pele by inline linking to third party website "SoccerPASSION.com").

Here, regardless of any distinctions the Court drew between the Defendant websites in this case and the search engine in *Perfect 10*, the Court unmistakably adopted the incorporation test as applied to the public display right online.  The Court based its reasoning in significant part on the Supreme Court's decision in *American Broadcasting Cos. v. Aereo, Inc.*, 134 S. Ct. 2498 (2014), which the Court here interpreted as standing for the broad principle that "liability should not hinge on invisible, technical processes imperceptible to the viewer."  Order at 21.  The Second Circuit may agree with the Court that *Aereo* undermines the persuasive force of *Perfect 10*.  But that is precisely the kind of controlling legal question on which there are substantial grounds for difference of opinion that satisfies the requirements of Section 1292(b).  *See, e.g.*, *Capitol Records, Inc. v. MP3tunes, LLC*, 48 F. Supp. 3d 703, 719 (S.D.N.Y. 2014) (rejecting broad application of *Aereo* beyond its highly unusual facts), *aff'd in part, rev'd in part on other grounds sub nom. EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79 (2d Cir. 2016)).

## II. PLAINTIFF MISCONSTRUES THE "CONTROLLING QUESTION OF LAW" AND "ADVANCE[S] THE ULTIMATE TERMINATION OF LITIGATION" PRONGS OF SECTION 1292(b).

Plaintiff concedes that reversal of the Order on interlocutory appeal would likely result in the dismissal of half the Defendants in the case.  Opp. at 13.  Yet he argues that the legal issue to

6

be decided on appeal is not "controlling" and that resolution of the appeal would not materially advance the ultimate termination of the litigation. *Id.* at 11, 13.

The legal issue of whether inline linking to a tweet implicates the display right is plainly a controlling question of law. Although Defendants have filed joint motions during this case, they are each entirely separate companies. The three Defendants who would be dismissed from the case in the event of a reversal on this threshold legal question each have an acute, independent interest in immediate appeal of the Order that is not diluted or lessened by the fact that other unrelated Defendants would remain in the case and have other claims to litigate. It is well settled that "resolution of an issue need not necessarily terminate an action in order to be 'controlling,' for the purposes of Section 1292(b)," so long as resolution of the issue "may importantly affect the conduct of [the] action." *Fed. Hous. Fin. Agency v. UBS Americas, Inc.*, 858 F. Supp. 2d 306, 337 (S.D.N.Y. 2012) (citation omitted). The complete elimination of half the defendants in a six-defendant case undoubtedly "affect[s] the conduct of [the] action." *Id.*

But even as to the Defendants for whom reversal of the Order would result in partial dismissal of the claims against them, an interlocutory appeal would advance the termination of the litigation by "significantly restrict[ing] the scope of [the] litigation." *Id.* at 338. Both Yahoo and Time have been sued for publishing articles with embedded links to the Photo at issue, and for publishing articles containing the Photo hosted on their own servers. However, these two different types of usage did not occur in the same article, by the same publication. Rather, the different uses occurred in articles published in separate publications that only happen to be co-owned by the two Defendants. Reversal of the Order would result in the dismissal of all claims against two of the publications.[5]

---

[5] In particular, as laid out in Defendants' summary judgment brief, Time's publication FanSided

7

In sum, keeping the "embed" claims in the case means that discovery will need to be taken and evidence heard at trial on separate publications from Heavy, NESN, Gannett, Breitbart, and two separate publications each from Yahoo and Time. Reversal of the Order would mean that not only would three of the six Defendants no longer be part of the case, but also that five of those eight separate acts of alleged infringement would not be part of trial at all. The third prong of Section 1292 is met when "an intermediate appeal 'promises to advance the time for trial *or to shorten the time required for trial*.'" *Capitol Records, LLC v. Vimeo, LLC*, 972 F. Supp. 2d 537, 551 (S.D.N.Y. 2013) (emphasis added) (quoting *Transp. Workers Union, Local 100 v. New York City Transit Auth.*, 358 F. Supp. 2d 347, 350 (S.D.N.Y. 2005)), *aff'd in part, rev'd in part on other grounds*, 826 F.3d 78 (2d Cir. 2016). The pendency of an appeal concededly may push back the date when trial in this case would commence, but reversal of the Order would <u>significantly</u> narrow the claims and issues to be tried, which satisfies the requirements of Section 1292(b).

## III.  THE COURT SHOULD EXERCISE ITS DISCRETION TO STAY THE ACTION PENDING INTERLOCUTORY APPEAL

As Judge McMahon explained in *Flo & Eddie*, "[t]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." 2015 WL 585641, at *4 (quoting *Nederlandse Erts–Tankersmaatschappij, N.V. v. Isbrandtsen Co.,* 339 F.2d 440, 441–42 (2d Cir. 1964) (citation omitted)). Given that reversal of the Order would

---

published an embedded link to a tweet containing the Photo. SI.com, a separate publication with a different staff and different offices**,** published a video that incorporated portions of the Photo for several seconds. Similarly, Yahoo moved for summary judgment as to an article published on Yahoo! Sports, which included an embedded link to a tweet containing the Photo, but not as to an article that had separately been published on Yahoo! News. Reversal of the Order would mean that no discovery would need to be taken <u>at all</u> of FanSided or as to the article on which Yahoo moved for summary judgment, and trial would not include evidence as to these wholly separate publications.

8

result in the removal of five of the eight publications from consideration in the case, these interests weigh in favor of a stay pending resolution of the interlocutory appeal.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion for certification of the Order for interlocutory appeal under Section 1292(b), and to stay proceedings pending the resolution of the interlocutory appeal.

Dated: New York, New York
      March 14, 2018

Respectfully submitted,

By: */s/ Robert Penchina*
    Robert Penchina

BALLARD SPAHR, LLP
1675 Broadway, 19th Floor
New York, NY 10019
Tel.: (212) 850-6109
penchinar@ballardspahr.com

*Attorneys for Defendant Gannett Company, Inc.*

By: */s/ Marc A. Lebowitz*
    Marc A. Lebowitz

LEBOWITZ LAW OFFICES LLC
777 Third Avenue, 35th Floor
New York, NY 10017
Tel.: (212) 682-0030
marc@lebolaw.com

*Attorneys for Defendant Heavy, Inc.*

By: */s/ Stephen M. Kramarsky*
    Stephen M. Kramarsky (SK-6666)
    Joseph P. Mueller (JM-3113)

DEWEY PEGNO & KRAMARSKY LLP
777 Third Avenue, 37th Floor
New York, NY 10017
Tel.: (212) 943-9000
skramarsky@dpklaw.com
jmueller@dpklaw.com

*Attorneys for Defendant New England Sports Network*

By: */s/ Lacy H. Koonce, III*
    Lacy H. Koonce, III (LK 8584)
    Eric J. Feder (EF 8016)

DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
Tel.: (212) 489-8230
Fax: (212) 489-8340
Email: lancekoonce@dwt.com
Email: ericfeder@dwt.com

*Attorneys for Defendants Time Inc.*

By: */s/ Thomas P. Lane*
    Thomas Patrick Lane

WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
Tel.: (212) 294-6700
Fax: (212) 294-4700
tlane@winston.com

Jennifer A. Golinveaux (*pro hac vice*)
WINSTON & STRAWN LLP
101 California Street
San Francisco, CA 94111
Tel.: (415) 591-1400
jgolinveaux@winston.com

*Attorneys for Defendant Yahoo Holdings, Inc.*